ZEB. V. WALSER v. WESTERN UNION TELEGRAPH COMPANY.

*Negligence—Telegraph Company—Failure to Deliver Telegram—Consequential Damages—Nominal Damages.*

1. Consequential damages, to be recoverable in an action of tort, must be the proximate consequence of the act complained of; and such damage must be capable of computation with reasonable certainty.

2. Where defendant telegraph company failed to deliver to plaintiff a message sent to the latter by the Comptroller of the Currency as follows: "Would you accept receivership of First National Bank, Wilmington?  Bond $35,000; compensation $200 per month, subject to future modification," and the pleadings in an action for damages for such failure to deliver raised no question as to exemplary damages, the plaintiff was entitled to recover only nominal damages, inasmuch as if the message had been received and an affirmative reply sent there would have been no legal obligation upon the Government or its appointing power to confer the office upon the plaintiff.

This was a CIVIL ACTION, tried at Fall Term, 1893, of the Superior Court of DAVIDSON County; before *Whitaker, J.*, and a jury.

The complaint was as follows:

The plaintiff complains and alleges:

"1. That the defendant is a corporation duly organized, and is and was in the month of December, 1891, engaged in receiving and transmitting by means of electrical wires messages between the city of Washington, District of Columbia, and the town of Lexington, State of North Carolina, for the public and receiving compensation therefor.

"2. That on the 17th day of December, 1891, the said company received from the Honorable E. S. Lacey, Comptroller of the Currency, and for valuable compensation undertook to transmit and deliver to the plaintiff at Lexington, N. C., a telegram in words and figures substantially as follows, to-wit:

"WASHINGTON, D. C., December 17, 1891.

"Z. V. WALSER, Lexington, N. C.:

"Would you accept receivership First National Bank, Wilmington. Bond thirty-five thousand. Compensation two hundred dollars per month, subject to future modification.                                    E. S. LACEY,
                                                        "*Compt.*"

"3. That said message, as plaintiff is assured and believes, was duly sent from the defendant company's office in Washington, D. C., over defendant's wires to Lexington, N. C., and was duly received by the defendant's agent at Lexington, N. C., but said agent carelessly and negligently kept and retained said message and never delivered the same as it was his duty to have done, in consequence of which the plaintiff never received the same.

"4. That by the failure of plaintiff to receive said message and accept the position tendered him by the said Comptroller of the Currency, which plaintiff would have done,

the plaintiff failed to receive the office, or position, which was worth to the plaintiff at least four thousand dollars, as plaintiff believes, to the damages of the plaintiff two thousand dollars.

"Wherefore the plaintiff demands judgment for two thousand dollars and the cost of this action."

The answer was as follows:

The defendant, answering the complaint, said:

"1. That it admits the allegations of the first article thereof.

"2. That it admits the allegations of the second article thereof, except that it avers that it undertook with the said Lacey that it would deliver said message to said plaintiff provided he could, with reasonable diligence, be found in the said town of Lexington, N. C.

"3. That in answer to the allegations of the third article thereof it admits that said message was duly sent and was duly received at Lexington, N. C., as alleged, but it denies the other allegations of the third article.

"4. That it denies the allegations of article four of the complaint.

"Wherefore defendant prays judgment that it go without day," etc.

The following issues were submitted to the jury by consent:

"1. Did the defendant company negligently fail to deliver the message set out in the complaint as alleged therein?

"2. What damages, if any, has the plaintiff sustained?"

"The plaintiff testified in his own behalf: "That on the 17th December, 1891, he lived in Lexington, N. C., and that he did not receive the telegram mentioned in the complaint; that something like a week prior to December 17, 1891, he had been in Washington, D. C., and saw Mr. E. S.

Lacey, Comptroller of Currency; he offered me the receivership of the First National. Bank of Wilmington, N. C., but told me the salary would not, in his opinion, be more than the salary formerly paid the cashier of this bank, which, as he thought, was about $1,600 or $1,800; that plaintiff declined to accept the office at that salary; that a day or two later he had another conversation with the Comptroller, in which he, the Comptroller, asked witness if he could take the place at a salary of $2,000 or more, and witness told him he would.   Mr. Lacey then said he had unofficial information that the affairs of the bank were in bad condition and asked witness to wait in Washington until he could hear from the bank examiners, then in Wilmington investigating the affairs of the bank; that witness replied that his father was very ill, and in consequence thereof he would have to go home at once; that Mr. Lacey then told witness he would let witness hear from him."   (All evidence as to conversation between plaintiff and the Comptroller was admitted after objection by the defendant). "That on the 21st day of December witness received the following telegram from Mr. Lacey:

"'I have to-day appointed W. S. O'B. Robinson receiver of the First National Bank of Wilmington.'

"That this telegram of the 21st December, 1891, was the first communication witness had received from the Comptroller since his return from Washington; that he was in Raleigh on the 17th December, 1891, on business of the public, to-wit, as a member of the legislative committee to examine the books of the State Treasurer; that before witness left for Raleigh, viz., about the 13th or 14th of December, 1891, after he had returned from Washington, he notified T. E. McCrary, then postmaster at Lexington, to wire or repeat to him all messages delivered to him, McCrary, and that he also notified Mr. C. W. Trice, chief

telegraph agent of the Western Union Telegraph Company at Lexington, to deliver all messages that should be sent to his office for witness to T. E. McCrary. The telegram dated 22d December, 1891, from Lacey to me was received by me while I was in Raleigh, and is as follows: ·

"'Telegram received; visit unnecessary; Robinson's commission issued yesterday.'

"This telegram was in reply to one I had sent Lacey from Raleigh on the morning of 22d December.

"On the evening of the 21st December, just before leaving Lexington for Raleigh, on seeing the two telegrams of 17th and 19th December, that I had not received, I sent Lacey the following message:

"'Your message of the 17th just received. . Will accept receivership on terms proposed. Wire me at Raleigh, N. C. Am there on committee investigating State Treasurer's books.'

"That witness returned from Raleigh on the night of December 19th, and went back on the night of 21st December to Raleigh. That Mr. Robinson told witness he was still engaged as receiver of the bank; that witness was during this period receiving a salary of $1,400 as Deputy Collector, and continued to receive the same up the 5th of August, 1893.

On cross-examination witness said: "That he was not an applicant for this receivership; that he told the Comptroller when he talked with him that he would like to have it if he could pay $2,000 or more; that he saw Judge D. L. Russell and Mr. Robinson in Washington and had a conversation with them ; that he saw the Comptroller last about six P. M. and left Washington at eleven P. M. same day; that witness told Robinson and Russell that he had told the Comptroller he would not take the receivership— that he had declined it; that he did not remember stating

to them that he had declined it because of the inadequacy of the salary; that Robinson is a good man—a man of character; that witness has a free pass from the R. & D. R. R. Co. as compensation as local attorney for that company, and that he may have had $5 or $10 from other sources. This receivership is held at the pleasure of Comptroller and liable to reduction of salary. That after interview with Comptroller at six P. M. he had no interview with Robinson or Russell."

It was admitted that the following telegram was sent by the Comptroller of the Currency to the plaintiff at Lexington, on the 19th December, 1891, to-wit: "I may conclude to appoint Robinson," and that the same was received at defendant's office in Lexington and never delivered either to plaintiff or to McCrary, his agent.

T. E. McCrary, for plaintiff, testified that the message mentioned in the complaint was never delivered to him for Walser.

William Swicegood, for defendant, testified: "Plaintiff talked to me about receivership; told me it had been offered to him. I told him I would like for him to remain in the county as Deputy Collector. He said he would not take the receivership; that he could not afford to do it for the difference there was in the salaries of the two places. He said the telegraph company had failed to deliver to him the telegram; that he was glad they had, because he could hold his Deputy Collectorship and sue the telegraph company and get as much out of the company as he might have made as receiver. This was a day or two after he got back from Raleigh."

There was much other evidence offered by both plaintiff and defendant as to the delivery of the message set out in the complaint.

The Judge charged the jury:

"1. That in no aspect of this case can the plaintiff recover more than nominal damages.

"2. That nominal damages meant five cents, twenty-five cents, or fifty cents, or other small amount."

The jury answered the first issue, "Yes," and the second issue, "Seventy-five cents," and there was judgment accordingly; and from the refusal of a motion for a new trial for misdirection in the charge of the Judge, as set out above, plaintiff appealed.

*Messrs. George F. Bason* and *Watson & Buxton*, for plaintiff (appellant).

*Messrs. Jones & Tillett*, for defendant.

MacRae, J.: The telegram set out in the complaint does not constitute an offer or tender of an office by the Comptroller to the plaintiff. It is an inquiry whether the plaintiff would accept a position named at the compensation stated. If it had been promptly delivered, as it should have been, and an affirmative answer had been returned, there would still have been no legal obligation upon the Government or its appointing power to have conferred the office upon the plaintiff.

While for the wrong done him by the negligence of the defendant in its failure to deliver the telegram the plaintiff is entitled to nominal damages at least (as has been so recently held by this Court that it is unnecessary to elaborate the proposition, *Young* v. *Telegraph Co.*, 107 N. C., 370), still there must be some measure by which damages may be computed before their assessment can be submitted to a jury.

What would be the measure of the plaintiff's damage? For the best of reasons, often reiterated in all appellate Courts of common law jurisdiction, juries are not permit-

ted to enter the regions of conjecture or speculation. When it is possible to ascertain a sum certain, of which the plaintiff has been deprived by the action or neglect of defendant, there is no difficulty in making the assessment. If there had been an unconditional offer of employment for a time certain, or, perhaps, if the length of the employment could have been reasonably computed and the compensation had been fixed, or its reasonable value determined, there would have been a fair measure of the plaintiff's injury. Can the damages which would naturally be expected to follow the injury be computed?

There is no reasonable certainty that plaintiff would have been appointed to the office. The result of the failure to deliver the message is simply that plaintiff *may* have lost an office. Consequential damage to be recoverable in an action of tort must be the proximate consequence of the act complained of. *Sledge* v. *Reid*, 73 N. C., 440. And such damage must be capable of computation with reasonable certainty.

The conditions failed in the present case because there was no such offer the neglect to communicate which deprived the plaintiff of the lucrative place named in the message.

While we have found no case directly in point in our own Reports there is no lack of authorities in the Courts of other States. In *Western Union Telegraph Co.* v. *Connelly*, 2 Texas Court of Appeal—civil cases (reported in *Chicago Legal News*, March 29, 1884), a telegram was sent from one Harris to Connelly in these words: "If you want a place, come on first train. Answer." Connelly brought suit alleging that by the failure of the telegraph company to deliver this message he lost the job, and the Court held that he was entitled to nominal damages only, and, in speaking of the telegram, said: "It does not contain any proposition which, if accepted by appellee, would amount to a con-

tract binding upon Harris. If appellee had answered the telegram that he wanted a place and would go to Milano on the first train, and he had gone on the first train, Harris would not have been under any legal obligations to give him a place. Suppose appellee had received the telegram and had gone to Milano on the first train and Harris had declined to give him the place, or had declined to employ him at $75, could appellee have maintained an action against Harris to compel him to enter into such contract, or to recover damages for his refusal to do so? Clearly not. * * * How, then, can it be contended that he is entitled to recover of appellant an alleged loss of gain, which gain might never have been realized, even if the telegram had been properly delivered to him?" A number of authorities are cited to support the ruling.

In *Merrill* v. *Western Union Telegraph Co.*, 78 Me., 97, in which the plaintiff's agent wired him that employment had been secured for him at $2.25 per day, commencing with September 1st, the plaintiff failed to get the message in time to reach the place on September 1st, and he therefore claimed that by the negligent failure of the telegraph company to deliver the message he lost the benefit of this contract, and he sued for damages. The Court denied the right to recover more than nominal damages, and said: "The contract was defeasible at the will of either party. How, then, can any substantial damages be measured? Had the engagement to employ the plaintiff been for any stipulated definite period not over one year the plaintiff would have a right to demand damages that could be definitely measured and assessed. He would then have been entitled to enjoy the fruit of his labor during the time of his engagement; but under the terms of the contract in proof he was liable to be dismissed from his employment as soon as he had entered upon it, and it cannot be known what damages he has suffered in the premises. The plaintiff must

prove his damages before they can be assessed. The case fails to show facts that warrant greater than nominal damages."

In *Clay* v. *Telegraph Co.*, 81 Ga., 285, a party wired the plaintiff to come to a certain place prepared to do certain work. Plaintiff failed to get the message and sued for damages for loss of the job. The Court held that plaintiff had only lost the *opportunity* of making a contract, and was entitled only to nominal damages. The message in question was merely a request for information upon which to base some contemplated but undisclosed action, and damages arising from a failure to deliver such message are too remote. Thompson on Electricity, sec. 321.

It follows that the plaintiff, having been injured, is entitled to some compensation; but the damages can only be nominal, because there is no measure by which they can be computed, unless, indeed, by reason of willful or reckless disregard of plaintiff's rights, or some aggravation of the injury, the law will authorize the jury to disregard the measure and give exemplary damages, the limits of which are only subject to the restraining power of the Court's discretion; or unless there be such gross negligence charged and shown, coupled with some mental anguish or distress, its consequence, as will warrant the award of compensation for the injured feelings.

The issues submitted by consent point to the simple question whether the defendant negligently failed to deliver the message, and if so, what was the damage to plaintiff?

There were no instructions asked upon the question of exemplary damages, and we are led to the irresistible conclusion that it did not arise upon the pleadings and was not presented upon the issue. In this view we concur with his Honor that in no aspect of the case could the plaintiff recover more than nominal damages.          No Error.