Action to recover damages for failure to deliver a telegram within a reasonable time, heard by his Honor upon exceptions to the report of a referee to whom the cause had been referred by consent. The judge overruled all the defendant's exceptions to the report and fully confirmed the same. To this judgment the defendant duly excepted and appealed.
Among other exceptions overruled by the Superior Court is defendant's exception to the 22d finding of the referee, which is as follows:
"22. That the plaintiff, the Clark Manufacturing Company, because of the aforesaid delays in transmitting and delivering the telegrams and messages referred to and set out in findings 5 and 13 above, which delays were caused by the negligence and want of ordinary care on the *Page 153 
part of the defendant, has been damaged in the sum of five hundred and fifty-six dollars and ten cents ($556.10), made up as follows:
 Difference between 8 1/2 cents (being amount of bona fide
offer and 8 1/4 cents (price at which sold) per yard for 166,000 yards of drill cloth ...................................... $415.00
 Loss of interest from 21 December, 1905, to 20 February, 1906, on $14,110, the amount for which said cloth would have sold at 8 1/2 cents per yard .......................... 141.00 ------- Total ................................................... $556.10
The facts are fully stated in the opinion of the Court.
From the findings of the referee it appears that about 10 o'clock a. m., 21 December, 1905, the Textile Commission Company filed in the office of the defendant, at New York, for transmission to the Clark Manufacturing Company, at Jonesboro, N.C. the following telegram:
NEW YORK, December 21, 1905.
CLARK MANUFACTURING COMPANY, Jonesboro, N.C.
Will you accept eight one-half all two-fifty drills on hand if we can get offer? Answer.
TEXTILE COMMISSION COMPANY.
This telegram was delivered to the Clark Manufacturing Company at Jonesboro, between 2:40 and 3 o'clock P. M. on (159) the same date. Prior to 3:15 P. M. the Clark Manufacturing Company filed with the defendant at Jonesboro the following message, addressed to the Textile Commission Company at New York:
JONESBORO, N.C. December 21, 1905.
TEXTILE COMMISSION COMPANY, 53 Worth Street, New York City.
Will accept eight half for two-fifty drills if you can do no better. Would like to close Osnaburgs order before cotton advances.
DAVID CLARK.
This telegram was delivered to the Textile Commission Company after 5 o'clock P. M. on same day.
Upon a consideration of this case, and after most careful examination of the full briefs filed by counsel for both parties, we are unanimously of the opinion that the learned judge of the Superior Court *Page 154 
erred in overruling the defendant's exception to the finding of the referee as to the quantum of damage.
Owing to the indefinite and uncertain character of the telegraphic correspondence, we think, upon the great weight of authority, both text-writers and judicial precedents, that the plaintiff is entitled to recover only nominal damage, to wit, the charges paid for the telegram from the Textile Commission Company, in case it has paid them or incurred them.
It seems to be an almost universal principle of the law of damage, imbedded in the jurisprudence of this country and Great Britain, and adopted by this State by unanimous decisions in many cases, that under any contract to transit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as necessarily arising, according to the usual course of things, from the breach of the very contract sued upon, or which both parties must reasonably have understood and contemplated, when making the contract, as likely to result from its breach. This principle is recognized in all cases cited by the learned counsel for plaintiff and in hundreds of others in addition.
It is founded upon the rule laid down in the familiar English case of Hadley v. Baxendale, 9 Exch., 345, which has been quoted and approved by the Supreme Court of the United States and practically all the other judicial tribunals of this country. Tel. Co. v. Hall,124 U.S. 444; Primrose v. Telegraph Co., 154 U.S. 883; Wood Mayne on Damages, sec. 13, and notes; Joyce on Damages, sec. 1403; Sutherland on Damages, sec. 50. The rule as stated by Joyce is that if the sender of a message does not notify the company of its importance or (160) of special damages which may result from a breach of the contract, and the message does not, from its language, convey to the company any such knowledge, only such damages may be recovered as could have been reasonably anticipated from the language of the message, and there can be no recovery for damages arising out of such special circumstances. Section 1403 and notes citing a great array of decided cases.
The rule is applied by this Court in actions against telegraph companies for negligence in transmitting and delivering messages. Williams v.Telegraph Co., 136 N.C. 84, and case cited. In his well-considered opinion in this case Mr. Justice Walker quotes at length from the Supreme Court of Massachusetts an extract showing the importance and inherent justice of this rule.
Applying this established principle to the facts of this case, it is quite clear that the plaintiff is not entitled to recover the special damages claimed. *Page 155 
It is not contended that the defendant had any notice of any special circumstances, or any other knowledge of the nature of the transaction, or of the consequences of delay, other than such as is afforded by the telegram itself.
It is apparent that the message gives no indication of a contract to sell or that one would be entered into immediately upon receipt of the answer, and the answer itself is not a definite acceptance of a proposition to sell, but makes it the duty of plaintiff's factor to endeavor to get a better price.
The telegram to plaintiff does not state that an offer had been made, but plainly implies that up to that date no such offer had been received. This is the construction that the sender intended should be placed upon it by the plaintiff; and the reply shows that it was the construction actually placed upon it by the sendee. In the examination of Meyer, general manager of the Textile Company, who sent the telegram, and who is examined as a witness for plaintiff, he is asked why he sent a misleading telegram, concealing the fact that he had such offer. The answer of the witness has at least one merit, and that is candor. He says: "For the reason that we knew that the offer which we had in hand was full market price for the goods and the best price that it was possible to get, and we worded our telegram as we did for the reason that we did not want the Clark Manufacturing Company to know positively that we had a definite offer, for, as is frequently the case with a mill, when they find you have a good offer, they expect you to get a little more, and in the meantime they sit down between two chairs and we miss the sale." And again in same deposition: "Q.: Do you mean that we shall understand you to (161) say that the telegram to your principal was distinctly meant to conceal from the person the fact that you had an offer for the goods?"
"A.: In the sense that we did not want them to know that we had a firm bid price, yes, acting in the best interest of the mill."
There is some attempt to show that it is the custom of commission houses to send such misleading telegrams to their principals, even when they have a definite bid, to prevent the factories from asking a higher price. But even if such evidence be considered pertinent, there is nothing to show that the defendant's agents had knowledge of such an extraordinary custom obtaining in the cotton-goods trade. We can see no reason why, if this telegram was intended to mislead, and actually did deceive the plaintiff, engaged in the business and supposed to be conversant with its peculiar usages, it should not also mislead this defendant as to the real purpose for which it was sent. *Page 156 
Giving it the only construction the words are susceptible of, the same obstacle confronts this plaintiff as in Beatty v. Telegraph Co.,52 W. Va. 410, where the Supreme Court of West Virginia says: "But the trouble facing the plaintiff in this case is that there was no final contract between the parties, but only a proposal for a contract, and there can be no contract without both a proposal and its acceptance. The failure of the telegraph company did not cause the breach of a consummate contract; it only prevented one that might or might not have been made." See, also,Hosiery Co. v. Telegraph Co., 123 Ga. 216, and Wilson v.Telegraph Co., 124 Ga. 131.
The offer must be distinct as such and not merely an invitation to enter into negotations [negotiations] upon a certain basis. Wire Works v.Sorrell, 142 Mass. 442; Beaupe v. Telegraph Co., 21 Minn. 155, and 24 Am. and Eng. and cases cited. See, also, Manufacturing Co. v. Filder,115 Ga. 408; Moulton v. Kershaw, 59 Wis. 316; Clay v. Telegraph Co.,78 Me. 97; Telegraph Co. v. Connelly, 2 Tex. Civil Appeals; Thompson Electricity; Clay v. Telegraph Co., 81 Ga. 285; Walser v. TelegraphCo., 114 N.C. 440; Telegraph Co. v. Way, 83 Ala. 559.
The text-writers declare that the offer must be one which is intended of itself to create legal relations upon acceptance. 1 Paige on Contracts, sec. 26; Clark on Contracts, sec. 29.
These principles were applied by the Supreme Court of the United States in a case like this, and a recovery for more than nominal damages denied. They were applied by this Court in a unanimous opinion in Tanning Co. v. Telegraph Co., 143 N.C. 376, in (162) many respects very similar to this, and a recovery of substantial damages denied.
The telegram in this case, as in that, is merely what the books call a "trade inquiry." The recent case of Williamson v. Telegraph Co.,151 N.C. 65, has no application to the facts of this case. The negligence there consisted in a mistake in transmission. In his opinion the learned Chief Justice asks the pertinent question: "Was the message such as would put the defendant on notice of damages resulting as the consequence of an erroneous transmission?" The Court thonght [thought] it did. The telegram related to an actual sale of goods and the error consisted in transmitting the word nine instead of ninety. The distinction between the cases is so marked and obvious that we will not discuss it.
The telegram in the case at bar not only failed to disclose on its face anything in the nature of a sale or contract, but was intended to create on the mind of the sendee the contrary impression.
It was calculated to mislead the company as well as the sendee as to the true nature of the transaction the sendee had in hand. When *Page 157 
the sender elects to studiously conceal the true nature of the transaction by misleading words, he thereby puts the telegraph company in ignorance as to the character of the duty imposed upon it or the magnitude of its liability, and the same principle which prevents a recovery in case of cipher messages will prevent it in cases of this character.
"Nothing is more important or just," says Somerville, J., in TelegraphCo. v. Way, 83 Ala. 563, "in this view of the subject, than that the law should require the sender at his hazard to disclose the meaning or nature of the message, in order that the company may observe such precautions as may be necessary to guard itself against the risk incident to the duty to be performed." Hale on Damages, p. 291, and cases cited.
There is no evidence in the record that the plaintiff has paid anything on account of the telegraph charges on the delayed message received from the Textile Company. If so, plaintiff would be entitled to recover such sum. That may be inquired into in the Superior Court.
The exception of the defendant to the 22d finding of referee is sustained and the cause remanded, to be proceeded with in accordance with this opinion.
Reversed.
The Chief Justice took no part in the decision of this case.
Cited: Newsome v. Telegraph Co., 153 N.C. 155.
(163)