**WESTERN UNION TELEGRAPH CO. v. HOLT et al. (No. 2882.)**

(Court of Civil Appeals of Texas. Texarkana. June 19, 1924. Rehearing Denied June 26, 1924.)

1. **Trial ⊙⇒350(7)—Refusal of special issues as to sender's contributory negligence held proper.**

Evidence that plaintiff, on receiving no reply to telegram because of defendant's failure to deliver reply, failed to endeavor to communicate with addressee by long distance telephone, *held* not so to raise issue of contributory negligence as to require special interrogatories thereon, especially in view of jury's negative answer to question propounded in general charge as to contributory negligence.

2. **Principal and agent ⊙⇒123(7)—Evidence held to make prima facie case of agency to purchase oil lease from plaintiff.**

In action for failure to deliver message, whereby plaintiffs lost sale of oil lease, testimony of one plaintiff that agent of petroleum company had offered to purchase oil lease, and that he had had dealings with agent in name of company, *held* to make prima facie case of agency.

**3. Principal and agent ⊚⟶23(2) — Agency provable by circumstances.**

Ordinarily agency can be proved by circumstances.

**4. Telegraphs and telephones ⊚⟶66(4)—Evidence held sufficient to show failure to deliver message caused loss of sale of oil lease, though offer therefor was not in writing.**

In action for failure to deliver message, whereby it was alleged plaintiffs lost sale of oil lease, evidence that, although offer to purchase lease was not in writing, the offer was definite in terms, and purchaser's agent was anxious to contract for lease, and would have entered into necessary writings had favorable answer been received in message, which was not delivered, was sufficient proof of damages to support verdict.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by Tom Holt and others against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Hamp P. Abney, of Sherman, W. H. Flippen, of Dallas, and Francis R. Stark, of New York City, for appellant.

Cunningham, McMahon & Lipscomb, of Bonham, for appellees.

HODGES, J. This appeal is from a judgment against appellant for damages resulting from the failure to transmit and deliver a telegraphic message.

At the time of the transaction disclosed by the record before us, the appellees were the owners of a tract of 160 acres of land situated in the oil territory around Graford, Palo Pinto county, Tex. They allege that on the 19th day of June, 1922, they were offered by the Roxana Petroleum Company $25 per acre for an oil lease of that land. The offer was made to Tom Holt, one of the appellees, who owned an undivided half interest in the land, the remaining half belonging to appellees Gauldin and wife. The offer came from one D. T. Marrs, who, it is claimed, was acting as the agent of the Roxana Petroleum Company. Gauldin and his wife resided at Honey Grove, in Fannin county, Tex. Holt agreed to accept the offer, provided Gauldin was willing. He immediately wired a message to Gauldin, telling him of the offer made. That message was promptly transmitted and delivered to Gauldin, who replied by wire as follows:

"Guess we had better take offer."

This second message was never delivered, and because of its nondelivery the contract for the lease of the 160-acre tract was not made. Holt did not learn of Gauldin's willingness to accept the offer until a week or more later. Marrs then refused to take the lease, saying his company did not want it.

The appellees alleged and proved negligence on the part of the appellant's agents in handling the second message. In response to special issues, the jury found that the telegraph company was negligent in failing to transmit and deliver the message, and that the plaintiffs were damaged thereby in the sum of $1,850.

The third interrogatory, submitting the issue of contributory negligence, was as follows:

"Would an ordinarily prudent man, circumstanced as was plaintiff Tom Holt, by the use of ordinary care have ascertained that the telegram dated June 19, 1922, had been sent and had not been delivered?" The jury answered, "No."

At the request of the appellant the court submitted the following:

"Was there an unqualified agreement entered into by Tom Holt and D. T. Marrs, whereby the said Marrs agreed to take and purchase an oil lease on the land described in plaintiffs' petition?"

To this the jury answered, "No."

A judgment was entered against the appellant for the sum of $1,850.

The following special charges were presented by counsel for appellant, and refused:

(1) "If the plaintiff Tom Holt had known that the message in question had not been delivered, could he have avoided the loss complained of herein?"

(2) "Could the plaintiff Tom Holt, by the use of ordinary care, and by the use of means at his disposal, have ascertained the fact that the telegram set out in plaintiffs' petition had been filed with defendant for transmission and not delivered?"

(3) "Was plaintiff Tom Holt guilty of contributory negligence in failing to use the means at his hands to find out whether plaintiff Gauldin had answered his message and authorized the sale of the land?"

The refusal to give one or more of the special charges above mentioned is assigned as error.

[1] The only evidence tending to raise the issue of contributory negligence on the part of Holt was his own testimony regarding other means of communication between Graford and Honey Grove. He stated that Graford was about 26 miles from Mineral Wells; that there was a telephone line running from Graford to Honey Grove, over which he had talked with Gauldin. He said, however, that the service was poor, and sometimes it was difficult to get satisfactory connection, but that it could be done. There was also a telephone line running from Mineral Wells to Honey Grove. Holt did not attempt to use the telephone, or any other means of reaching Gauldin on that occasion. It appears that when he failed to get an answer to his telegraphic message he took it for granted

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that Gauldin was unwilling to accept the offer made by Marrs.

When Holt delivered his message for transmission he had a right to rely upon appellant's agents to promptly send and deliver it, and also to promptly transmit and deliver an answer from Gauldin, if one was sent. Holt was not required to make any further effort to communicate with Gauldin until he had good reason to believe that the telegraphic service was inefficient or unreliable. There was nothing except the failure to get an answer to put Holt on notice that a message from Gauldin had been lost. Such failure might have resulted from one of several different causes: Gauldin might have been absent from the city; or appellant's agents might not have been able to find him; or he might have concluded to take more time to consider the offer; or he might have been unwilling to accept the offer and decided to ignore the message and use the mails for an explanation. Holt had a right to assume that, if Gauldin could not be found by the agents of the telegraph company, it was not likely that he could be located by the agents of the telephone company; that, if Gauldin was unwilling to accept the offer sent by telegraph, it was not likely that he would accept one sent by telephone. Appellant is in no attitude to say that the mere failure to get an answer was sufficient, under the circumstances, to put Holt on notice that the telegraphic service was inefficient, or that appellant's agents had been negligent. It is at least doubtful if the facts raise the issue of contributory negligence. In any event, having answered as they did the question propounded by the court in his general charge relating to contributory negligence, it is not likely that the jury would have given a contrary answer in response to the interrogatories refused.

[2, 3] The appellant also requested a peremptory instruction upon the ground that the evidence did not show that Marrs was the agent of the Roxana Petroleum Company. Holt was the only witness who testified upon that issue. While he stated that Marrs was the agent of that company, in giving the basis of that statement it appeared that he was relying upon circumstances indicating such agency. He testified, in substance, that he had other dealings with Marrs in leasing oil lands; that Marrs had conducted those transactions in the name of the Roxana Petroleum Company, had given him checks drawn on the Roxana Petroleum Company in payment of the purchase money of leases, and those checks had been paid; that the Roxana Petroleum Company was actively engaged in buying and developing leases; that Marrs rode in a car which bore the initials or name of the Roxana Petroleum Company, and used stationery bearing the name of that company; and that the grip in which he carried his papers was also stamped with the name of the Roxana Petroleum Company. Appellant offered no evidence tending to discredit the force of those facts or to contradict the statements made by Holt. Agency can, ordinarily, be proved by circumstances; and those detailed by Holt are, we think, sufficient to make a prima facie case for the purposes of a suit of this character, where the authority of the agent must be shown only to prevent a variance between the allegations and the proof.

[4] Appellant further insists that, even if Marrs was the agent of the Roxana Petroleum Company and did make the verbal offer to take a lease on the 160-acre tract of land at $25 per acre as claimed by Holt, there are still no legal grounds for a recovery of damages in this case. Holt testified that on June 19, 1922, he and Marrs met in Graford and went over a map of the oil territory; that after he had explained to Marrs his personal holdings and those in which he was jointly interested with Gauldin, Marrs pointed out on the map several tracts of land that he would lease. Among them he indicated this tract of 160 acres, and stated that he would give $25 per acre for it. Holt then agreed to lease lands which he owned, and entered into contracts to that effect with Marrs. He told Marrs, however, that Gauldin and wife were jointly interested with him in the 160-acre tract, and he could not lease that without securing their consent. He then sent a telegraphic message informing Gauldin of the offer. Mars remained at Graford the rest of the day. Failing to get a reply when expected, Holt made repeated efforts to ascertain if his message had been promptly sent. He was informed by the agent that the message had been sent and delivered. Marrs inquired of Holt several times if he had heard from Gauldin. Later in the evening Marrs left, telling Holt that he was going to Mineral Wells, and that if he heard from Gauldin by night to phone him at Mineral Wells. No message was received from Gauldin, and Holt did not know until a week or more later that Gauldin had sent an answer. After learning from Gauldin that he was willing to accept the offer, he then renewed negotiations with Marrs, but the latter declined to take the lease. Marrs was not called as a witness, and Holt's testimony was not contradicted.

The objection to the legal sufficiency of this evidence is based upon the fact that the offer made by Marrs was not in writing, and for that reason was not enforceable. It is said that, even if Gauldin's message had been promptly delivered to Holt and communicated to Marrs, the latter had the right to withdraw his offer and decline to take the lease. Hence it is argued the probability that a contract would have been made was too weak to support a claim for damages in a suit of this character. As supporting that proposition, appellant refers to W. U. Tel. Co. v.

Connelly, 2 Willson, Civ. Cas. Ct. App. § 113. The facts of that case show that Connelly was out of employment and was seeking a place in the service of the railway company. He had applied to J. A. Harris, an agent in the railway service, for employment. Harris wired him as follows:

"If you want a place come first train. Answer."

That message was never delivered, and Connelly failed to get the place. He sued and recovered a judgment for damages for the loss of a contract of employment. A judgment rendered in his favor in the trial court was reversed on appeal; the appellate court holding that the facts were not sufficient to support a conclusion that Connelly would have secured the desired employment had the message from Harris been delivered. This case is cited with approval by the Supreme Court of North Carolina in Walser v. W. U. Tel. Co., 114 N. C. 440, 19 S. E. 366. In the latter case the comptroller of the currency sent the following message to Walser:

"Would you accept receivership of First National Bank, Wilmington? Bond $35,000; compensation $200 per month, subject to future modification."

The court held that the amount that might have been earned under the prospective employment was too uncertain to form the basis of a judgment for damages. In each of those cases a recovery was denied because no specific contract had been offered to the complaining party. In the Connelly Case the message from Harris did not contain an offer of employment on any definite terms, or for any definite time, or in any particular branch of the service. All of those features were left open for future negotiations. The same degree of uncertainty is found in the North Carolina Case. But in the present case the subject-matter and terms were certain and specific. The particular tract of land was pointed out, and the price of the lease named; all that remained was to reduce the terms agreed upon to writing, after receiving a favorable answer from Gauldin. To be valid as a conveyance, a lease of the character under consideration must be in writing. To be binding and enforceable, contracts to make and take such leases must also be in writing. Counsel for appellant

contend that, in order to furnish a legal basis for damages for the loss of such a contract, it must be shown that the offer or tender was in writing. In other words, they insist that the status of the negotiations must be such that the missing message was all that was required to complete a binding contract. No case is cited in which that proposition is authoritatively approved. It was not involved in either of the two cases above referred to. A contrary holding does inferentially appear from the ruling made in Walser v. Telegraph Co. There the offer of employment came from the comptroller of the currency, acting in his official capacity. It will not be contended that he could bind his principal, no matter what the form of the offer, or however specific he might have been. The judgment of the trial court was affirmed on the ground of uncertainty as to the extent of the loss, probably sustained by the complaining party. No allusion is made to the fact that such an offer, coming from such a source, even if otherwise sufficiently definite, could not be enforced.

The requirement that contracts conveying, or to convey, real estate must be in writing is found in a statute. But there is no statute which requires that an offer to purchase real property be reduced to writing before it can be made the basis of a suit of this character. What the courts demand is that the facts must show with reasonable certainty that a well-defined contract has been offered and lost, and that the carrier of the message is responsible for the loss. The quantum of proof required to establish those facts is no greater than is required to establish other essential facts. We cannot assume, as a matter of law, that a party making a verbal offer will probably not stand by his offer and enter into a written contract that does bind. The testimony in this case, if true, tends strongly to show that Marrs, as the agent of the Roxana Petroleum Company, was willing and anxious to make the contract for the lease, and that he would have entered into the necessary writings had a favorable answer been received from Gauldin on that day. This case, we think, comes within the rule announced in McPeek v. W. U. Tel. Co., 107 Iowa, 356, 78 N. W. 63, 43 L. R. A. 214, 70 Am. St. Rep. 205. See, also, W. U. Tel. Co. v. Oldsmobile Co. (Tex. Civ. App.) 250 S. W. 221.

The judgment will be affirmed.