## S. R. Lucas, Appellant, v. The Western Union Telegraph Company.

**Brokerage:** PROSPECTIVE PROFITS : DAMAGES : EVIDENCE.  Where the prospective profit on a real estate transaction was proven and plaintiff testified that he was acting for himself, that the profit belonged to him and that he was in position to close the deal, it was error to direct a verdict for defendant on the ground that plaintiff had failed to establish an interest in the profits.

**Exchange of real property:** PROPOSITION BY MAIL: ACCEPTANCE BY-
TELEGRAM. Where one submits a proposition of exchange or
sale of real estate by mail he impliedly authorizes an accept-
ance through the same agency, and the deposit of the ac-
ceptance in the post office completes the contract; but one
transmitting a proposition by mail is not bound by an ac-
ceptance returned in some other way until it is received or
he has notice thereof, unless he has suggested the method
adopted for transmitting the reply.

**Same:** TELEGRAMS: DELAY IN TRANSMISSION: DAMAGES. A propo-
sition for the exchange or sale of real estate which calls for
a reply "at once" means an answer within a reasonable time
under all the circumstances.

In the instant case it is sought to recover damages from a
telegraph company for a negligent delay in transmitting an
acceptance and under the particular circumstances it is held,
that the questions of whether it was received in time to bind
the parties and whether the seller lost his profit through a
negligent delay in transmitting the acceptance, were for the
jury.

*Appeal from Woodbury District Court.*— HON. J. L. KEN-
NEDY, Judge.

FRIDAY, OCTOBER 19, 1906.

ACTION for damages occasioned by delay in transmit-
ting a telegram. Verdict was directed for defendant, and
the petition dismissed. Plaintiff appeals.— *Reversed.*

*M. J. Sweeley and F. E. Gill,* for appellant.

*Wright & Call,* for appellee.

LADD, J.— Plaintiff sought to recover profits he would
have made in an exchange of real estate but for the negli-
gence of defendant in failing to promptly transmit a tele-
gram. Verdict was directed for defendant on two grounds:
(1) There was no proof of damages; and (2) the delay in
transmitting the message did not occasion the loss. Plain-
tiff resided at Anthon, Iowa, and was engaged in the business

of "buying and selling lands and exchanging real property." He had been negotiating for some time to exchange property at Shelby, this state, with William Sas of Dexter, Iowa, and, in the evening of November 11, 1904, received a letter, written and mailed by Sas two days previous, making the following proposition: "I will put in my store property here with the extra piece of ground back of it just as I showed you last spring and $6,500 in cash, any encumbrance now on property to be deducted from above amt. and assumed by me. If above is satisfactory please make out your contract and send down. I will make a $1,500 deposit until the papers can be made out and abstract brought down, if I get the building I expect I can make a better deal with Jacobs. My man here takes my stock between 5th and 10th of January. I will have to know at once as I have other deal pending." At 9:10 o'clock the next morning plaintiff handed defendant's agent at Anthon this telegram: "November 12, Anthon, Iowa, 1904. To William Sas, Dexter, Iowa. Just received letter. Offer accepted. Send contract to-day. S. R. Lucas." It was not sent until 4:41 o'clock p. m., and was delivered to Sas the same evening at three minutes after 6 o'clock. The latter immediately wrote plaintiff that he had put another party off until 3:30 o'clock p. m. of that day, and, not hearing from him, had negotiated an exchange with another. Evidence was offered tending to support the statement.

The jury might have found from the evidence that the Dexter property was worth at least $2,500 and that the Shelby property did not exceed in value $5,500, leaving a profit on the deal of not less than $4,500. 1. Brokerage: prospective profits: damages: evidence. The defect in the proof, relied on by defendant, was that plaintiff failed to show any interest in the prospective profit. He testified, without objection: "I was acting for myself in making the deal. . . . The profits of the deal, if any, belonged to me." He was also asked: "Mr. Lucas, you said on cross-exam-

ination that you made a deal of this same property at Shelby for the person who then owned it at the time of this proposed deal. You may now state whether you had from him a deed to the property to enable you to close the deal with Mr. Sas. A. I did." The profit to be derived from the exchange, if made, was proven, and this, according to the testimony of plaintiff, belonged to him, and, as he had a deed from the owner to enable him to close the deal, we think he had established his right to recover. Possibly, had there been objection to this evidence, it might have been necessary, in order to make out a case, to prove the ownership of the property at Shelby, and plaintiff's authority to handle it, but, in the absence of any objection, we think his statements, although in the nature of conclusions of fact, established his claim to the profits had they been realized. The trial judge seems to have been of this opinion but held that the contract was completed in fact, and therefore that plaintiff suffered no damages by reason of the delay.

The proposition of an exchange was made to plaintiff by letter. In committing it, properly addressed to the mails for transmission, the post office became the agent of Sas to carry the offer, he taking the chances of delays in the transmission. *Maclier's Adm'rs v. Frith,* 6 Wend. (N. Y.) 103 (21 Am. Dec. 262); *Adams v. Lindsell,* 1 B. & Ald. 681; *Averill v. Hedge,* 12 Conn. 424, 9 Cyc. 294. Having sent the proposition by mail he impliedly authorized its acceptance through the same agency. Such implication arises (1) when the post is used to make the offer and no other mode is suggested, and (2) when the circumstances are such that it must have been within the contemplation of the parties that the post would be used in making the answer. *Tuttle v. Iowa State Traveling Men's Association,* 132 Iowa, ——. The contract is complete in such a case when the letter, containing the acceptance is properly addressed and deposited in the United States mails. *Trevor v. Wood,*

2. EXCHANGE OF REAL PROPERTY: proposition by mail: acceptance by telegram.

36 N. Y. 307 (93 Am. Dec. 511) and note; *Brewer v. Horst-Lachmund Co.,* 127 Cal. 643 (50 L. R. A. 240) and extended note; *Dunlop v. Higgins,* 1 H. L. C. 381; *Household Ins. Co. v. Grant,* 41 L. T. N. S. 298, 9 Cyc. 295. This is on the ground that the offerer, by depositing this letter in the post office, selects a common agency through which to conduct the negotiations, and the delivery of the letter to it is in effect a delivery to the offerer.   Thereafter the acceptor has no right to the letter and cannot withdraw it from the mails.   Even if he should succeed in doing so the withdrawal will not invalidate the contract previously entered into.

But plaintiff did not adopt this course.   On the contrary he chose to indicate his acceptance by transmitting a telegram to Sas by the defendant company.   Sas had done nothing to indicate his willingness to adopt such agency and the defendant in undertaking to transmit the message was acting solely as the agent of plaintiff.   The latter might have withdrawn the message or stopped its delivery at any time before it actually reached Sas.   It is manifest that handing the message to his own agent was not notice to the sendee of the telegram.   The most formal declaration of an intention of acceptance of an offer to a third person will not constitute a contract.   A written letter or telegram, like an oral acceptance, must be communicated to the party who has made the offer or to some one expressly or impliedly authorized to receive it, and this rule is not complied with by delivering it to the writer's own agent or messenger even with direction to deliver to the offerer.   *Hebbs' Case,* L. R. 4 Eq. 9.   In that case Hebbs wrote asking that certain shares in a newly formed company might be allotted to him.   The directors instructed their agent through the mail that such an allotment should be made and the shares were registered as Hebbs'.   It was held that this did not complete the contract or render it obligatory on him to take and pay for the shares.   Lord Romilly, in the course of the opinion, said:

" If A writes to B a letter offering to buy land of B for a certain sum of money, and B accepts the offer and sends his servant with a letter containing his acceptance, I apprehend that, until A receives the letter, A may withdraw his offer, and B may stop his servant on the road and alter the terms of his acceptance or withdraw it altogether; he is not bound by communicating the acceptance to his own agent." Dunlop v Higgins, *supra;* decides that the posting of a letter accepting an offer constitutes a binding contract, but the reason of that is that the postoffice is the common agent of both parties.

The party making the offer may be entirely satisfied to trust the mails, and not be willing to chance the use of the telegraph. The principle is lucidly stated so as to make the company his agent in the somewhat recent work of Hare on Contracts, 363.

A written acceptance is not complete until it reaches the person from whom the offer came, or some one who receives it on his behalf or is under an imperative obligation to deliver it to him; and sending such a paper through a servant or agent will not render it obligatory while it is in the keeping of the messenger or before delivered to the party to whom it is addressed and may be altered or destroyed. . . . So we may believe that one who replies by telegram to an offer sent by mail may exercise a like control over the message while it is on the way, and that the person to whom it is addressed cannot recover damages for failure of the company to forward a communication for which he has not paid. When, however, a proposal made by telegraph is accepted through the same channel it may plausibly be contended that the parties have selected the company as their common agent, and the contract is complete as soon as the message is placed in the hands of the company for transmission. The obligation of a contract arises from the fulfillment of the conditions on which the promisor agreed to be bound, and these are that the promisee shall signify his assent by writing sent to a telegraph office or put in the mail, nothing more is requisite. From this point of view both parties are entitled to require that the

acceptance shall be forwarded without alteration or delay, and it cannot rightfully be withdrawn or cancelled without the consent of both.    The test is, can the company surrender the acceptance without being liable to the party who made the offer.    If the question must be answered negatively in view of all the circumstances the contract is complete.

It is very evident on authority and principle that, in the absence of any suggestion, one transmitting an offer by mail cannot be bound by an acceptance returned in some other way until it is received or he has notice thereof.

The plaintiff, then, did not accept the offer of Sas until the telegram was received by the latter, a few minutes after 6 o'clock p. m. of the day after the letter had been received and the question arises whether this was " at once " within the meaning of the offer which stated that another deal was pending.    Like " forthwith " and " immediately," " at once " does not mean instantaneously but requires action to be taken within a reasonable time, or, as said in *Warder, Bushnell & Glessner Co. v. Horne,* 110 Iowa, 283, it is synonymous with the words mentioned and " as soon as possible," and is " usually construed to mean within such reasonable time as shall be required under all the circumstances for doing the particular thing."    It is doubtful whether the same vigilance should be exacted in the acceptance of an offer to exchange or purchase real estate as in transactions relating to the transfer of chattel property.    See *Kempner v. Cohn,* 47 Ark. 519 (1 S. W. 869, 58 Am. Rep. 775).    The circumstances of each case necessarily have an important bearing.    There was no evidence of the time a letter, if promptly mailed, might have reached Sas.    He had indicated in his letter that he was contemplating another deal, and we think ordinary minds fairly differ as to whether, in these circumstances, an acceptance twenty-three or twenty-four hours after the letter had been received was in time to bind the

party making the offer, and the issue was for the jury to determine. There are numerous decisions determining that the time within which an acceptance has been made is reasonable or unreasonable, but few passing upon the question as to whether the circumstances were such as to carry that issue to the jury. Each case necessarily depends upon its particular facts, and for this reason authorities are of slight aid in determining the question.

If, because of unreasonable delay in the acceptance, the contract was not completed, then it was also for the jury to say whether the defendant was negligent in transmitting the message, and, owing to this, plaintiff lost the benefit of entering into the contract. It follows that the court erred in directing a verdict for the defendant.— *Reversed.*