TANNING COMPANY v. TELEGRAPH COMPANY.

(Filed December 18, 1906).

*Telegraphs—Delivery of Message—Damages Recoverable—*
*Contract—Offer and Acceptance.*

1. Where S. wrote to the plaintiff as follows: "Kindly advise us by
wire Monday if you can use 1,500 creosote barrels between now
and January 1st, at 95 cents, delivered in carload lots," and plain-
tiff filed with defendant on Monday a message addressed to S. as
follows: "We accept your offer of 1,500 barrels as per yours of
the 7th": *Held,* that the letter from S. was a mere "trade inquiry,"
and was not a legal offer binding on acceptance, and plaintiff's
reply did not create a contract, and plaintiff is entitled to recover
of defendant by reason of its negligence in the delivery of the mes-
sage only nominal damages, to-wit, the price of the message.

2. An acceptance, to bind the other party, must be unconditional and
unqualified and must correspond exactly to the terms of the offer.

ACTION by the Cherokee Tanning Extract Company against
the Western Union Telegraph Company, heard by *Judge
Thomas A. McNeill* and a jury, at the April Term, 1906, of
the Superior Court of CHEROKEE.

This is an action for damages alleged to have been sus-
tained through negligence of the defendant in failing to trans-
mit and deliver promptly a certain telegram. From a judg-
ment in favor of the plaintiff, the defendant appealed.

*Dillard & Bell* for the plaintiff.

*Merrick & Barnard* and *F. H. Busbee & Son* for the
defendant.

BROWN, J. There is no dispute as to the material facts.
The evidence shows that on 7 November, 1903, an agent of
the Standard Oil Company at Wilmington, N. C., wrote to
the plaintiff, at Andrews, N. C., a letter containing, among
other things, this request: "Kindly advise us by wire Monday
if you can use about 1,500 creosote barrels between now and

January 1st, at 95 cents each, delivered in carload lots."
That the plaintiff received this letter on Monday, November
9, and at 7:30 P. M. of that day filed with the defendant,
at its Andrews office, a message addressed to the Standard Oil
Company, Wilmington, N. C., and reading as follows: "We
accept your offer 1,500 barrels as per yours of the 7th."
This message was delivered to the sendee at 10:36 A. M.,
November 10. At the same time it wrote to plaintiff, the
Oil Company addressed a similar letter to the Brevard Tan-
ning Company and others. The latter company purchased
the barrels by telegram received by the Oil Company shortly
before plaintiff's message. The plaintiff claims substantial
damage. Defendant requested the Court to charge that plain-
tiff was entitled to recover nominal damages only, to-wit, the
price paid for the telegram. We think this instruction should
have been given.

Damages are measured in matters of contract not only by
the well-known rule laid down in *Hadley v. Baxendale,* 9
Exch., 341, but they must not be the remote, but the proxi-
mate consequence of a breach of contract, and must not be
speculative or contingent. Unless the reply of plaintiff by
wire to the letter of the Oil Company created a contract
between the two for the sale and delivery of 1,500 barrels at
95 cents each, then plaintiff can recover only nominal dam-
ages, for any other damages would necessarily be purely spec-
ulative or contingent. The language of *Brannon, J.,* in a
similar case in West Virginia is appropriate to this: "But
the trouble facing the plaintiff in this case is that there was
no final contract between the parties, but only a proposal for
a contract, and there can be no contract without both a pro-
posal and its acceptance. The failure of the telegraph com-
pany did not cause the breach of a consummate contract; it
only prevented one that might or might not have been made."
*Beatty v. Telegraph Co.,* 44 S. E. Rep., 309. See also *Hos-*

*iery Co. v. Telegraph Co.,* 51 S. E. Rep., 290, and *Wilson v. Telegraph Co.,* 52 S. E. Rep., 153. The offer must be distinct as such and not merely an invitation to enter into negotiations upon a certain basis. *Wire Works v. Sorrell,* 142 Mass., 442; *Beaupre v. Telegraph Co.,* 21 Minn., 155; 24 Am. and Eng. Enc., 1029, and cases cited.

Again, the offer must specify the specific quantity to be furnished, as a mere acceptance of an indefinite offer will not create a binding contract. *McCaw Mfg. Co. v. Felder,* 115 Ga., 408; 24 Am. and Eng. Enc., 1030, note 1, and cases cited. "The offer must be one which is intended of itself to create legal relations on acceptance. It must not be an offer merely to open negotiations which will ultimately result in a contract." 1 Paige on Cont., sec. 26, and cases cited; Clark on Contracts, sec. 29.

In *Moulton v. Kershaw,* 59 Wis., 316, the defendants wrote to the plaintiff as follows: "In consequence of a rupture in the salt trade, we are authorized to offer Michigan fine salt in full carload lots of 80 to 75 barrels, delivered at your city at 85 cents per barrel to be shipped per C. & N. W. R. R. Co. only. At this price it is a bargain, as the price in general remains unchanged. Shall be pleased to receive your order." The plaintiff at once telegraphed the defendant: "Your letter of yesterday received and noted. You may ship me two thousand barrels Michigan fine salt as offered in your letter." The defendant declined to deliver the salt, and plaintiff sued for damages. The Supreme Court of Wisconsin, sustaining a demurrer to the complaint, held that the communications between the parties did not show a contract; that the letter of the defendant was not such an offer as plaintiff could by an acceptance change into a binding agreement. See also *Smith v. Gowdy,* 90 Mass., 566.

The letter from the Oil Company to the plaintiff was a mere inquiry. *Walser v. Telegraph Co.,* 114 N. C., 440. It

was evidently a "trade inquiry" sent out by the Oil Company to customers, and did not purport and was not intended to be a legal offer binding on acceptance. "Care should be taken always not to construe as an agreement letters which the parties intended only as preliminary negotiations." *Lyman v. Robinson,* 14 Allen (Mass.), 254.

Again, the acceptance by the plaintiff was not in the terms of the offer. The acceptance was for 1,500 barrels. The Oil Company could not have compelled the plaintiff to take a less number. If the plaintiff regarded the Oil Company's letter as a valid offer, it should have replied that it would take what barrels the Oil Company had, not exceeding 1,500, as that company had offered no exact specific number. "An acceptance, to bind the other party, must be unconditional and unqualified and must correspond exactly to the terms of the offer." 24 Am. and Eng. Enc., 1031, 1032, and cases cited; 1 Parsons Cont., 476, 477. As the plaintiff's message to the Oil Company seasonably delivered would not of itself have effected a legal contract between the plaintiff and the Oil Company for the delivery of 1,500 barrels at 95 cents each, it follows that any other than nominal damage would be purely speculative. The Oil Company might have delivered the barrels, and then again it might not have done so. It might have delivered 1,500, and again it might have delivered a much less number. Its letter specified no exact number, and it was under no legal compulsion to deliver any.

As the defendant manifests its willingness to pay nominal damages, it is unnecessary to consider the exceptions to his Honor's rulings on the issue of negligence. We award a new trial upon the second issue relating to the damages.

Partial New Trial.