HYMAN WYNEHOUSE ET AL. *vs.* SAMUEL MANDELSON.

Third Judicial District, New Haven, June Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

The plaintiff sought to recover damages for the alleged conversion of two horses of which he was the conditional vendee, and which, he claimed, had been stolen from his premises shortly after their delivery to him. He testified in his own behalf that he had no knowledge of the whereabouts of the horses until about eight months thereafter, when he found them in the possession of the defendant, who refused, upon written demand, to surrender them. *Held* that evidence offered by the defendant to show that the plaintiff had known for months where the horses were and yet had made no effort to obtain them, tended to discredit the plaintiff's testimony and should have been admitted for that purpose, especially as the defendant under the peculiar circumstances of the case was obliged to rely largely upon the intrinsic improbability of the plaintiff's story.

Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. No precise and universal test of relevancy is furnished by the law, but in determining the admissibility of evidence regard should be paid to practical rather than to theoretical considerations.

Argued June 14th—decided July 31st, 1911.

ACTION for the conversion of two horses and other personal property, brought to the Court of Common Pleas in Fairfield County and tried to the jury before *Scott, J.;* verdict and judgment for the plaintiffs, and appeal by the defendant. *Error and new trial ordered.*

*John C. Chamberlain,* for the appellant (defendant).

*Samuel J. Witz,* for the appellees (plaintiffs).

RORABACK, J.  The plaintiff offered evidence to show that the horses in question were purchased under a conditional bill of sale from one Bernard Weill, and that the title to the horses was to remain in Weill until the balance, $325, of the purchase price was paid; that about the time the first payment of the balance of the purchase price became due the horses, with other property, were stolen from the barn of the plaintiff; that the morning after the property was stolen information was received that they were in the barn of Weill, the vendor; that in consequence of this information the plaintiff went to Weill, who informed him that if he would pay the notes at this time he would return the notes, the conditional bill of sale, and the horses and other property; that to obtain this property the plaintiff Wynehouse paid Weill $325 in cash, when Weill, for the first time, informed him that the notes were in the bank where he kept his account, and that Weill then agreed that he would return the horses, together with other property, the notes, and the bill of sale at the plaintiff's home; that within three days thereafter Weill caused the arrest of the plaintiff Wynehouse upon the charge of disposing of this property belonging to Weill under the conditional bill of sale, of which offense Wynehouse was tried about the middle of February, 1906; that the horses and property, notes, and conditional bill of sale

were never delivered by Weill, because he died shortly after the payment of the $325; that during the month of October, 1906, Wynehouse located the horses in Stamford, Connecticut, in the possession of the defendant, who refused to surrender the property upon written demand.

The defendant, among other things, claimed and offered evidence to show that Weill had never retaken possession of the horses; that the horses disappeared from the visible possession of the plaintiff at about the time when the first note given by him for the horses became due; that upon demand, after the notes became due, the plaintiff Wynehouse refused to pay, because the horses, as he claimed, had been stolen, and also because he had no money to pay for them; and that the notes had never been paid.

Numerous errors are assigned. One relating to the exclusion of evidence is as follows: The plaintiff, Hyman Wynehouse, testified on his own behalf and upon direct examination, that he was arrested and charged with the theft of these horses and other articles of property in Brooklyn, New York, within two or three days after the payment of the notes February 13th, 1906; that at the time the plaintiff appeared in the magistrate's court upon the charge, he had a conversation with Bernard Weill, and asked Weill what he meant by causing the plaintiff's arrest, after he paid him the notes and after Weill had promised to return to the plaintiff the notes, the conditional bill of sale, the horses and property; and that this conversation was between the 16th and 19th day of February, 1906. Upon cross-examination, the plaintiff testified that seven or eight months after this conversation he ascertained that the horses were in Stamford, Connecticut.

At the close of the evidence the following offer, ruling, and exception occurred: "Mr. Rowell [attorney for the

defendant]—Now, if your Honor please, I offer in evidence an exemplified copy of the record in the case of the People of the State of New York against Wynehouse and Goldstein which has been referred to so often here. I offer it for the purpose of proving the date and rebutting Mr. Wynehouse's testimony. He testified that he had been arrested within a few days after the theft of these horses. I offer this for the additional rebuttal of Mr. Wynehouse's statement that he did not learn where these horses were until six or eight months after this trial in special sessions. The record will show, first, the date of the arrest, and will show it to be different from that which Mr. Wynehouse states, showing that it was not for some months—The Court—You should not state what it will show. The jury will disregard this statement about what it will show, of course. Mr. Rowell—It will also show that Mr. Wynehouse at the time of this trial knew that the horses were in Stamford. Mr. Slade—I shall object to it, if your Honor please. The Court—It is excluded. Mr. Rowell—Will your Honor note an exception? The Court—Yes."

The plaintiff Wynehouse had testified that he did not know of the location of his horses until October, 1906. It was material and proper for the defendant to show that Wynehouse knew of the whereabouts of these horses when he was arrested and tried in February.

In denying a motion to set aside the verdict in the case the trial court stated: "Both of the counsel in their arguments to the jury, and the court also in the charge, especially emphasized the importance of determining the truthfulness of the testimony of Wynehouse and his son that, after the horses had been taken from the possession of the plaintiff, he paid Weill the outstanding notes and received from the latter a promise to return the notes and to see that the horses also were returned. The jury must have believed this testimony and must

have rendered a verdict for the plaintiff, because they believed it. Weill was dead and the defendant was necessarily obliged to oppose the evidence of Wynehouse and his son by showing the intrinsic improbability of their story, especially in connection with the conduct of the plaintiff and Weill, and the untrustworthiness of its narrators as shown by their appearance on the witness stand and by their contradiction upon other points, by other witnesses. . . . It cannot be said that the story of the plaintiff and his son was impossible; the most that can be said is that it would be a severe tax upon the credulity of the average trier to believe it."

If the defendant was in the possession of proper evidence to show that within a week after the alleged payment and promise of delivery the plaintiff Wynehouse knew that these horses were in Stamford, and yet made no effort to obtain possession of them for six or seven months thereafter, such conduct would have tended to discredit the testimony of Wynehouse. Such inaction, particularly after an arrest for criminally disposing of this identical property, would hardly be consistent with the conduct of an ordinary individual under like circumstances.

It does not appear why this testimony was excluded, but it must have been upon the theory that the trial court considered that it was irrelevant. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience. Thayer's Cases on Evidence, 2, 3. 'If the evidence offered conduces in any reasonable degree to establish the probability or

improbability of the fact in controversy, it should go to the jury.' *Insurance Company* v. *Weide*, 11 Wall. (U. S.) 438, 440. The question as to its admission or rejection addresses itself to the court as one to be answered with a view to practical rather than theoretical considerations." *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 Atl. 998. Under the peculiar circumstances which the court below has found existed upon the trial of this action, we think that in this instance these rulings were so prejudicial to the defendant as to warrant a new trial.

The other errors assigned we deem unnecessary to consider, as none of them furnish any ground for a new trial.

There is error and a new trial is ordered.

In this opinion the other judges concurred.