P. BERRY & SONS, INC. vs. WESTERN UNION TELE-GRAPH COMPANY.

First Judicial District, Hartford, May Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued May 14th—decided June 13th, 1929.

*Lucius F. Robinson, Jr.,* for the appellant (defendant).

*Philip H. LaFleur,* for the appellee (plaintiff).

BANKS, J.   The plaintiff, a wholesale distributor of fruits and produce in Hartford, had had business dealings for several years with one Moulton, a wholesale dealer in sauerkraut in Phoenix, New York, and prior to July 22d, 1925, requested Moulton to furnish it the lowest price of sauerkraut.   In answer to this request Moulton, on July 22d, 1925, sent the plaintiff a telegram which read: "Seven fifty best price we can

quote." On July 24th, 1925, the plaintiff delivered to the defendant a telegram addressed to Moulton which read: "Accept two cars new kraut new casks forty five early shipment seven fifty," the "forty-five" meaning forty-five gallons per cask, and "early shipment" meaning early shipment in the fall when the new kraut was put up. This telegram was not delivered by the defendant, which fact the plaintiff learned about September 14th, 1925, and within a week thereafter purchased from Moulton two car loads of sauerkraut at $9 a barrel, making no effort to hold him to a contract for the purchase of the sauerkraut at $7.50 a barrel. The trial court held that the two telegrams constituted a contract between the plaintiff and Moulton, and awarded the plaintiff as damages for the failure of the defendant to deliver the telegram of July 24th, the difference in price between two car loads of sauerkraut at $7.50 per barrel and $9 per barrel.

Plaintiff's telegram of July 24th, standing alone, was merely an order for two cars of sauerkraut at the price named, which Moulton could have accepted or not as he saw fit. Since, upon that assumption, it would have been entirely speculative as to whether Moulton would have filled the order the plaintiff could not be said to have suffered any loss by reason of the defendant's failure to deliver the telegram. If, however, as claimed by the plaintiff, its telegram was an acceptance of an offer contained in Moulton's telegram of July 22d, the two together constituted a contract, for causing the breach of which the defendant would be liable in compensatory damages. This would be so even though the telegram of July 24th was not delivered to Moulton, it being agreed that it took effect as an acceptance, if at all, upon its delivery to the defendant for transmission. The question presented then is whether,

upon the facts found, an enforceable contract was entered into between the plaintiff and Moulton. If there was not the defendant's liability for failure to deliver the telegram is limited to the amount of the toll charge for the same.

The plaintiff having first learned by inquiry from Moulton his asking price for sauerkraut, ordered two cars of it specifying early shipment of new kraut in new casks containing forty-five gallons each. Clearly there was no obligation upon Moulton to accept and fill this order unless it can be said that his previous quotation of his best price for sauerkraut constituted an offer and that this order was an acceptance of the offer. So far as appears the quotation furnished by Moulton was given in answer to a general inquiry as to the price of sauerkraut. It furnished such information as would be provided in a price list sent to his customers of whom the plaintiff was one. It did not offer to sell to the plaintiff any particular quantity or quality of sauerkraut nor contain any of the terms of a proposed contract save only a unit price. In sending this price quotation Moulton was not making an offer but supplying information. The plaintiff's undelivered telegram was an offer—not the less so because called an acceptance—and this offer was never accepted.

The difference between a price quotation and an offer which is intended on acceptance to establish contractual relations turns upon the intention of the parties to be deduced from the language used. If the language indicates merely an intent to open negotiations which will ultimately result in a contract, or to call forth an offer in legal form from the other party it does not constitute an offer. We cite a few typical cases in which it has been held that the language used did not indicate an intention to make an offer which

on acceptance would effectuate a binding contract. *Harvey* v. *Facey*, L. R. (1893) App. Cas. 552; *Smith* v. *Gowdy*, 90 Mass. (8 Allen) 566; *Moulton* v. *Kershaw*, 59 Wis. 316; *Schenectady Stove Co.* v. *Holbrook*, 101 N. Y. 45; *Stein-Gray Drug Co.* v. *Michelsen Co.*, 116 N. Y. Supp. 789; *Allen* v. *Kirwan*, 159 Pa. St. 613, 28 Atl. 495; *Ashcroft* v. *Butterworth*, 136 Mass. 511; *Beaupré* v. *Pacific & Atlantic Telegraph Co.*, 21 Minn. 155; *Cherokee Tanning Extract Co.* v. *Western Union Telegraph Co.*, 143 N. C. 376, 55 S.E. 777.

In some cases communications accurately defining the property to be sold and the price demanded have been rather technically construed as not sufficiently definite or comprehensive in their terms to constitute an offer. See 1 Williston on Contracts (1920 Ed.) § 27. While it is generally true that an offer must contain the complete terms of the proposed contract so that its unqualified acceptance will definitely fix the rights of the parties, there are no doubt cases where one may be bound by an offer to sell personal property when the amount or quantity is left to be fixed by the person to whom the offer is made. This would be the case, however, only when it fairly appeared from the language of the offer that the person making the offer intended that result to follow. In the present case there is nothing in Moulton's telegram, or in the circumstances under which it was sent, to indicate an intention to be bound to furnish the plaintiff with any quantity of sauerkraut which the latter might see fit to order after learning the price at which it could be bought. His telegram was no more than a statement of the price at which he held his sauerkraut, and the plaintiff's telegram was an order which Moulton might accept or reject. Since Moulton was not bound to fill the order the plaintiff

has failed to prove that the defendant's failure to deliver its telegram caused it any substantial loss.

There is error, the cause is remanded, and the Court of Common Pleas directed to enter its judgment in favor of the plaintiff for the amount of the tolls paid by it with interest from July 24th, 1925.

In this opinion the other judges concurred.