L. & E. WERTHEIMER, INC. *v.* THE WEHLE-HARTFORD COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 5—decided November 8, 1939.

*James J. O'Connor,* with whom, on the brief, was *Dennis P. O'Connor,* for the appellant (defendant).

*Daniel C. Flynn,* for the appellee (plaintiff).

HINMAN, J. The plaintiff is an Ohio corporation engaged in a whiskey brokerage business; the defendant is a Connecticut corporation which, in 1937, dealt in whiskeys. The amended complaint alleged that on May 13, 1937, the defendant offered to the plaintiff a quantity of whiskey and "after negotiations" a series of telegrams passed between the parties, which culminated in a contract by the defendant to sell a specified quantity of whiskey to the plaintiff, which the defendant refused to perform. The defendant, by special defense, alleged that there was no acceptance of the defendant's offer in accordance with its terms, that acceptance was not transmitted "immediately" as required by the offer, and that the offer was revoked by the defendant before acceptance by the plaintiff.

The finding states that the defendant owned five lots of barrelled whiskey, a total of two hundred and thirty-four barrels, approximately eleven thousand five hundred gallons, located in a warehouse in Baltimore, Maryland. Each lot was represented by a separate certificate in the possession of the defendant. Whiskey prices were declining rapidly, the defendant was anxious to sell the entire quantity and had been negotiating with dealers and brokers, including the plaintiff, for its sale. It appears from exhibits made part of the finding that on May 13, 1937, the defendant by letter invited an offer therefor by the plaintiff in line with prices stated. On May 15th the plaintiff, by telegram, offered to buy twenty-two barrels. To this the defendant replied that its entire holdings must be sold as one lot. On May 18th the plaintiff sent to the defendant a telegram as follows: "RELATIVE LOTS BALTOPURYE HAVE FIRM ORDER AS FOLLOWS TWENTY TWO SPRING THIRTY FOUR AT TWO FIFTY FIVE STOP TWENTY FALL THIRTY FOUR AT DOLLAR SEVENTY STOP TWENTY ONE SPRING THIRTY FIVE AT DOLLAR FIFTY STOP FIFTY ONE FALL THIRTY FIVE AT DOLLAR TWENTY STOP HUNDRED EIGHTEEN SPRING THIRTY SIX AT NINETY TWO AND HALF CENTS STOP THIS FIRM ORDER SUBJECT IMMEDIATE ACCEPTANCE PRICES NET TO YOU IF ACCEPTABLE WIRE IMMEDIATE CONFIRMATION FORWARD PAPERS." This telegram, which was marked Exhibit 5 on the trial and is hereafter so referred to, was received by the defendant at 11.38 a. m. on May 18th. At 7.14 p. m. of the same day the defendant sent the plaintiff a telegraphic night letter, Exhibit 7, stating: "WE ACCEPT YOUR ORDER AS FOLLOWS TWENTY TWO SPRING THIRTY FOURS AT TWO FIFTY FIVE STOP TWENTY FALL THIRTY FOURS AT DOLLAR SEVENTY STOP TWENTY FOUR SPRING OR JANUARY TO JUNE THIRTY FIVES AT ONE DOLLAR FIFTY STOP FIFTY FALL THIRTY FIVES AT ONE

DOLLAR TWENTY STOP HUNDRED EIGHTEEN SPRING THIRTY SIX AT NINETY TWO & HALF CENTS PRICES NET TO US CONFIRM IMMEDIATELY." The only changes in specification of lots from those in Exhibit 5 were an increase of three barrels of "spring thirty five" and a decrease of one "fall thirty five," a net increase of two barrels. The telegram last quoted was received at the office of the plaintiff May 19th, at 8.29 a. m. At 11.16 a. m. the plaintiff deposited in the telegraph office in Cincinnati, a telegram, Exhibit 8, which was received by the defendant at 12.05 p. m., reading: "WE ACKNOWLEDGE YOUR ACCEPTANCE OUR ORDER BALTIMORE RYE FORWARD PAPERS DRAFT ATTACHED FIRST NATIONAL BANK THIS CITY STOP ABOUT WHEN WILL PAPERS GO FORWARD PLEASE WIRE IMMEDIATELY OUR EXPENSE." At 11.02 a. m. that day the defendant sent from Hartford a telegram to the plaintiff, Exhibit 9, "Cannot hold your offer of May eighteenth open any longer." This was received by the plaintiff at 11.46 a. m. At about noon the defendant sold the whiskey to another firm; the plaintiff had a contract to resell it at a profit of $360, for which amount judgment was rendered.

Findings which are sought to be corrected are subsidiary and incidental to the foregoing and no corrections can be made which would affect the essential conclusion that from these exchanges a contract binding upon the defendant was established. The wording of the telegrams and the conduct of the parties indicate that, at the time, Exhibit 5 was regarded by the parties as an order for the quantities specified therein, Exhibit 7 as an acceptance thereof, qualified only as to the relatively slight changes in quantity, and that Exhibit 8 was intended to be an acceptance by the plaintiff of that qualification. These, standing by themselves, would be sufficient to evidence and constitute a meeting of the minds and a contract binding upon both

parties. The result would be the same if, as the defendant now claims, Exhibit 5 be regarded as an offer to purchase and Exhibit 7 a counter offer to sell a slightly different quantity at the same prices and on the same terms. *Berry & Sons, Inc.* v. *Western Union Telegraph Co.*, 109 Conn. 371, 374, 146 Atl. 501. Exhibit 8 would constitute an acceptance of such counter offer with, if the acceptance be seasonable and unconditional, the contractual consequences of such an acceptance.

The defendant claims, however, that there was such failure by the plaintiff to "confirm immediately" as instructed in Exhibit 7, as to absolve the defendant from such obligation as would otherwise attach to acceptance. As appears above, Exhibit 7 was received by the plaintiff at 8.29 a. m. on May 19th and its acceptance was filed with the telegraph company at 11.16 the same morning, an interval of less than three hours. The word immediately "where used in connection with human conduct, as in the case of a requirement that a certain thing shall be done immediately, . . . is generally held to require that the act shall be performed, not instantly, but without unreasonable delay having regard to the nature of the thing to be done." *O'Brien* v. *Wise & Upson Co., Inc.*, 108 Conn. 309, 312, 143 Atl. 155; *Baker* v. *Metropolitan Casualty Ins. Co.*, 118 Conn. 147, 149, 171 Atl. 7; *Lucas* v. *Western Union Telegraph Co.*, 131 Iowa 669, 675, 109 N. W. 191, 6 L. R. A. (N. S.) 1016; 4 Words & Phrases (1st Series) 3404, 2 op. cit. (2d Series) 947. The defendant appears to have, itself, adopted such a construction, for while plaintiff's telegram (Exhibit 5) called for "immediate confirmation" and was received at 11.38 a. m. May 18th, the defendant did not dispatch its reply until 7.14 p. m. and then by night letter which it knew would not be delivered until the following morning.

What is a reasonable time is to be determined by the facts of the particular case in hand. *Meyers* v. *Dunn,* 126 Ky. 548, 554, 104 S. W. 352, 13 L. R. A. (N. S.) 881, 883; *Lucas* v. *Western Union Telegraph Co.,* supra, 676. We are unable to hold unwarranted, as matter of law, the trial court's conclusion that, under the circumstances, the plaintiff sufficiently conformed to the requirement of immediate confirmation.

The further conclusion that the deposit by the plaintiff of its acceptance (Exhibit 8) in the telegraph office before receipt of the defendant's notice of revocation established the contract is also assigned as error. Revocation of an offer in order to be effectual must be received by the offeree and "before he has exercised his power of creating a contract by acceptance of the offer." Restatement, 1 Contracts, § 41 and § 69, Comment *a*; 1 Page, Contracts, § 134. Acceptance is operative, if transmitted by means which the offeror has authorized, as soon as its transmission begins and it is put out of the offeree's possession (Restatement, 1 op. cit., § 64; 1 Page, op. cit., § 199) irrespective of whether or when it is received by the offeror. *Mercer Electric Mfg. Co.* v. *Connecticut Electric Mfg. Co.,* 87 Conn. 691, 695, 89 Atl. 909. The defendant's revocation was not completed by the filing of the message (Exhibit 9) but would have become effectual only when received by the plaintiff. As the plaintiff filed with the telegraph company the telegram (Exhibit 8) accepting the defendant's proposal before receipt of the defendant's message, the contract thereupon became complete. *Patrick* v. *Bowman,* 149 U. S. 411, 424, 13 Sup. Ct. 811, 866; *Burton* v. *United States,* 202 U. S. 344, 384, 26 Sup. Ct. 668; *Brauer* v. *Shaw,* 168 Mass. 198, 200, 46 N. E. 617; *Stephen M. Weld & Co.* v. *Victory Mfg. Co.,* 205 Fed. 770, 775; note, 47 A. L. R. 159.

A further claim of the defendant now is that the

direction in Exhibit 8 to "forward papers, draft attached" to a specified Cincinnati bank introduced a new condition which so qualified the acceptance as to render it not positive and unequivocal as is required in order to consummate a contract. 1 Williston, Contracts, §§ 72, 73. We find in the record no indication that this contention was advanced on the trial and are under no obligation to consider it. *Pierce, Butler & Pierce Mfg. Corp.* v. *Enders,* 118 Conn. 610, 616, 174 Atl. 169. We note, however, that the finding shows that ownership of the several lots of whiskey was represented by separate certificates, by transfer of which conveyance of title logically would be made, and the plaintiff's telegram of May 15th contained a direction, similar to that in Exhibit 8, to forward papers with draft attached. This suggested procedure appears to have been tacitly assented to by the defendant and is to be regarded as thereafter in contemplation of the parties and implicit in their negotiations.

Error is assigned in admitting in evidence the letter of May 13th and the telegraphic communications preceding Exhibit 7, which were objected to on the ground that the contract, if any, was constituted by Exhibits 7 and 8, and that prior steps in the negotiations were irrelevant and immaterial. As appears from the foregoing, however, these had a causal connection and logical relation with the ultimate issue and tended to aid the trier in its determination and therefore were not open to the objection interposed. *Wynehouse* v. *Mandelson,* 84 Conn. 613, 617, 80 Atl. 706; *Pope Foundation, Inc.* v. *New York, N. H. & H. R. Co.,* 106 Conn. 423, 435, 138 Atl. 444; *State* v. *Fasano,* 119 Conn. 455, 460, 177 Atl. 376; *Barnett* v. *State,* 104 Ohio St. 298, 306, 135 N. E. 647; 20 Am. Jur., p. 240. For like reasons the motion to expunge allegations of the complaint covering prior negotiations was properly denied;

they tended "more clearly to disclose the actual situation involved in the controversy." *State* v. *Erickson,* 104 Conn. 542, 550, 133 Atl. 683.

There is no error.

In this opinion the other judges concurred.