FLOYD G. WOOD
*vs.*
TOWN OF CLINTON

Superior Court     · Middlesex County     File No. 8423·

MEMORANDUM FILED MARCH 30, 1942.

*Robert R. Rosan,* of Milford, for the Plaintiff. ·

*Morris Wrubel,* of Middletown, for the Defendant.

INGLIS, J.   During the school year 1940-1941 the plaintiff had acted as superintendent of the schools in the defendant town under a contract with the board of education and had also acted as superintendent of the Morgan School, a secondary school located in Clinton, pursuant to a contract with the trustees of that school.   His salary as superintendent of schools had been $1,500 and as superintendent of the Morgan School $1,500.

At a meeting of the board of education of the town held on May 13, 1941, it was voted "That Dr. Wood be offered a contract as Superintendent of Schools for one year from July 1st, 1941 at a salary not less than his present salary contingent upon similar action by the Board of Trustees of the Morgan School."   Before anything further was done looking toward the completion of a contract with Dr. Wood, however, a dispute arose between Dr. Wood and some members of the board as to whether he would recommend a teacher, Miss Northrop, for reappointment and on May 20th the board reconsidered the above motion and it was voted down.

On May 27th, the board met again and, at that time, Dr. Wood having recommended the reappointment of Miss Northrop, adopted the following resolution by a yea and nay verbal vote, three voting "yes" and two voting "no": "That Dr. Wood be offered a contract as Superintendent of Schools for one year from July 1st, 1941 at a salary not less than his present salary contingent upon similar action by the Board of Trustees of the Morgan School."   At this meeting Dr. Wood thanked the board for the vote but did not say specifically that he would accept any contract.

On June 1st, the board of trustees of the Morgan School voted to concur with the town board "in offering Floyd G. Wood a contract as Superintendent of Schools for one year from July 1, 1941 at a salary of $3,000., one half to be paid by the Board of Education and one half by the Trustees of the Morgan School."

The next action taken by either party to this litigation with reference to the proposed contract after the vote of May 27th, was a vote of the board at its meeting of June 2nd.   At that time it was voted: "That the Board of Education ex-

tend the Superintendent, Dr. Wood, an increment of $50 per year on the portion of his salary paid by the board."

Immediately after this meeting, the plaintiff prepared a draft contract on a form furnished by the State Board of Education for teachers' contracts, signed it and handed it to the secretary of the board. Up to this time, there had been some discussion of the form which the contract should take. As drafted by Dr. Wood the proposed contract contained some conditions as to the method of terminating the employment, which conditions had not been approved or even discussed by the board prior to the close of the meeting of June 2nd. The amount of salary stated in the draft agreement was $1,550. The trustees of the Morgan School never took any action to fix their contribution to the salary at anything over $1,500, except that at their meeting of June 1st they had voted that they would leave the matter of salary entirely in the hands of the town board and would concur in any action the town board might take.

At a town meeting of the Town of Clinton held on June 7, 1941, it was voted to petition the State Board of Education to provide supervision of the schools of the town. The number of teachers employed by the town is less than 25 so that Clinton is entitled to supervisory service under section 247c of the 1935 Cumulative Supplement to the General Statutes and the State Board started furnishing that service on September 3, 1941.

The only further action of the board of education relating to the claimed contract with Dr. Wood was taken on June 9th. At a meeting held on that day it was voted "that the chairman be and he hereby is authorized in the name of and on behalf of this Board to sign and deliver contracts for all employees of the Board." Neither the draft contract submitted by Dr. Wood nor any other formal contract, however, has ever been executed on the part of the board of education.

Upon all of the evidence in the case, it is clear that both Dr. Wood and the members of the board of education intended from the beginning of the negotiations that any contract which was arrived at would be a formal written contract. When the board voted on May 13th and again on May 27th that Dr. Wood be offered a contract both they and he understood that what was meant by that was a formal written contract. Accordingly, it was their understanding and intention

that neither party would be bound until a formal written contract was executed by both. Everything prior to the execution of such contract was intended to be simply negotiation leading up to a contract. That being the intention of the parties as gathered from the language used in the resolution adopted by the board interpreted in the light of the surrounding circumstances, and no formal contract having been signed, it follows that there is no completed contract binding on either of the parties. *Restatement, Contracts* §26; *Berry & Sons, Inc. vs. Western Union Telegraph Co.,* 109 Conn. 371; *Atlantic Terra Cotta Co. vs Chesapeake Terra Cotta Co.,* 96 id. 88; *Garber vs. Goldstein,* 92 id. 226.

Moreover, all of the essential terms of the proposed contract never were agreed to, at least not prior to the vote of the town on June 7th. The vote of the board on May 27th was nothing more than an offer to start negotiations. It was all on the contingency that the trustees of Morgan School would cooperate, and, at best, it left indefinite the amount of the salary to be paid and all of the detailed terms and conditions which the board expected to incorporate in any binding contract. By the vote of June 2nd, the board cleared up the matter of the amount of the salary but still left open the detailed terms. Accordingly, the delivery to the board by Dr. Wood after that meeting of the draft form of contract was not an acceptance by him of any offer made by the board. It was rather an offer made by him to enter into a contract in that form. That offer has never been accepted. It follows, therefore, that at least prior to June 7, 1941, there was never a completed agreement.

The action of the town meeting on June 7th put it out of the power of the board to thereafter provide for a superintendent of schools. Section 247c of the 1935 Cumulative Supplement to the General Statutes provides expressly that "each such agent [supervisory agent appointed by the State Board of Education] shall discharge the duties of superintendent." Accordingly, towns procuring the services of a supervisory agent have no need for a local superintendent of schools. It goes without saying that the vote of a town meeting looking to procurement of a supervisory agent removes from the board of education of that town the power to appoint a superintendent and prevents any later valid action of the board looking to that end.

It must be concluded, therefore, that no binding contract was made between the board and Dr. Wood prior to June 7th and that thereafter no such contract could be made whereby he was constituted superintendent of schools.

Parenthetically, it might be pointed out, because it has been argued to the contrary by the defendant, that if a complete contract had been agreed to and if the votes of the board had set forth all of the terms of the contract, the record of those votes signed by the secretary of the board would have been an adequate compliance with the Statute of Frauds. *Lamkin vs. Baldwin & Lamkin Mfg. Co.*, 72 Conn. 57.

There is one other reason why the plaintiff does not have a contract enforceable against the defendant. That is because such a contract as he claims would be *ultra vires* of the board of education. The board had power to procure the services of a superintendent only by virtue of section 243c of the 1935 Cumulative Supplement to the General Statutes. That section reads in part as follows: "The board of education of each town shall provide for the supervision of the schools under its control by a superintendent or supervising agent. If any such board shall elect a superintendent, such election shall be by ballot, and the board shall fix the salary of the superintendent and his term of office. . . ." This section makes it clear that a superintendent of schools is not an employee to be hired by contract but a public officer to be elected. *State ex rel. Hoerle vs. Thomas*, 127 Conn. 426. And he is to be elected by ballot.

In the present case the board did not elect the plaintiff as superintendent. It entered into negotiations with him for a contract of hiring, which is quite a different thing. They certainly did not choose him by ballot. A ballot is a form of vote by ball or by writing in such a manner that there is physical evidence from which the result of the vote appears. Certainly a yea and nay verbal vote such as was taken on the resolutions relating to the proposed contract with Dr. Wood is not a vote by ballot. It follows that even though a contract of hiring had been completed between the board and Dr. Wood it could not stand because it was not an election by ballot and was, therefore, outside of the powers vested in the board by the statute.

· The plaintiff seeks to avoid this conclusion by claiming a ratification of the claimed contract by way of estoppel based

upon the fact that, from July 1, 1941, to September 3, 1941, the board of education accepted the services of the plaintiff acting as superintendent of schools. It is true that "where a contract is one which the municipality had power to make, it is possible for a court to hold that the municipality has, by taking the benefit of the contract, ratified it, or estopped itself from claiming it was not executed according to law." *Bridgeport Brass Co. vs. Drew,* 102 Conn. 206, 215; *Norwalk Gaslight Co. vs. Borough of Norwalk,* 63 id. 495; 44 C.J. *Municipal Corporations* §2225. In this case, however, the acceptance of the plaintiff's services was by the board of education and not by any act of the town as a whole and that acceptance came after the town meeting of June 7th. By vote of the town meeting, as pointed out above, the power of the board of education to make any arrangements for procuring a super-intendent of schools had been removed. The board of educa-tion, by July 1st, no longer had the power to either elect or contract for a superintendent of schools. If it no longer had the power to bind the town by either an election or by a contract, it certainly had no power to bind the town by at-tempting to ratify an invalid contract. *Driscoll vs. New Haven,* 75 Conn. 92, 98; *Turney vs. Town of Bridgeport,* 55 id. 412. Accordingly, the acts of the board of education in accepting the plaintiff's services as superintendent after July 1st could not operate by way of estoppel as a ratification of the claimed contract.

On their briefs, the parties have both discussed the ques-tion as to whether the defendant is liable to the plaintiff in *quantum meruit* for the value of his services rendered between July 1st and September 3rd. This question, however, is not in issue on the pleadings; no evidence was offered as to the value of those services and the prayers for relief do not fairly ask for an ajudication of the question.

Judgment may enter declaring that no valid contract exists between the plaintiff and the defendant or its board of educa-tion employing the plaintiff as superintendent of schools of the public schools of the defendant for the term commencing July 1, 1941 and ending June 30, 1942.

No costs shall be taxed in favor of either party.