## DIANA OIL CO. v. CAYTON. (No. 816.)

Court of Civil Appeals of Texas. Waco. June 13, 1929.

Rehearing Denied Sept. 19, 1929.

I. W. Keys, of Mexia, and A. M. Blackmon, of Groesbeck, for appellant.

L. W. Shepperd, of Groesbeck, for appellee.

GALLAGHER, C. J. This suit was instituted by appellee, W. K. Cayton, against appellant, Diana Oil Company, a corporation, to recover damages for the alleged breach of a contract to drill an oil well. Appellee alleged that he was the owner of a block of oil and gas leases located in Henderson county, which he desired to have tested; that he entered into a written contract with appellant, in which it agreed to drill a well on said acreage in consideration of a certain amount thereof and the sum of $5,000 in cash. The acreage which appellant was to receive was described in said contract, a copy of which was attached to appellee's petition, and consisted of approximately 300 acres. Appellee alleged that appellant without cause breached said contract and refused to drill said well; that he employed Dearing & Sons to drill the same; that he was compelled to pay them therefor the sum of $7,-500 cash, to assign to them 90 acres of acreage out of said block, and to pay half the cost of the derrick in the further sum of $475. The acreage alleged to have been assigned to Dearing & Sons was wholly different from the acreage described in the contract between appellant and appellee. Appellee further alleged that the remainder of the acreage which he had agreed to assign to appellant was left on his hands; that he was unable to dispose of the same; that the same became wholly worthless, when said well was completed as a dry hole. Appellee alleged damages as aforesaid in the aggregate sum of $2,975, for which he prayed judgment.

Appellant denied that it breached said contract, and alleged that its failure to drill said well was due to appellee's inability and refusal to comply with his contract with it, in this: That appellee agreed to deliver to it, as soon as possible after the execution of said contract, abstracts showing merchantable title vested in him to the oil and gas leases covering all property to be assigned to it, as provided in such contract; that no abstracts to some of said tracts were ever submitted; that the abstracts submitted showed outstanding interests in some tracts, not conveyed to nor vested in appellee; that such abstracts showed on some of such tracts prior liens which materially affected the value of the leases thereon; that said defects rendered several of the tracts on which abstracts were in fact submitted unmerchantable, and that appellee could not submit abstracts to all of said property showing a merchantable title in him, as he had contracted to do; that appellant, on examination of such abstracts as were submitted, immediately notified appellee of the defects therein; that such defects were never cured, and could not be cured; that appellant was for such reason released from its obligation to drill said well, which would have required a large expenditure of money. Such facts as are necessary to an understanding of the issues hereinafter discussed will be recited in connection therewith.

The trial was before the court, and resulted in a judgment in favor of appellee against appellant for the sum of $2,975. The court, at the request of appellant, filed findings of fact and conclusions of law. Said judgment is here presented for review.

## Opinion.

The trial court found as a fact that the acreage, which reverted to appellee when appellant declined to proceed with its contract to drill said well, had no value, and that appellee was unable to realize any sum therefor. Appellant asserts that the evidence is insufficient to sustain said finding. The testimony showed that the aggregate acreage released by appellant was approximately 300 acres. While the 90 acres assigned to Dearing & Sons was other and different acreage from that which appellant was to receive, no question of the relative value of such acreage is raised. The testimony shows that, among the tracts which reverted to appellee on appellant's refusal to proceed with the drilling of the well, was an undivided one-half interest in the 45-acre tract upon which the well was to be drilled by appellant, and upon which the well was afterwards drilled by Dearing & Sons. The testimony further shows that it was expressly stipulated in appellant's contract that it should have a half interest in the well when drilled, and that such interest reverted to and remained in appellee. The other acreage which so reverted was "spread" over the whole block. Appellee testified on the issue involved in said finding as follows:

"I could not dispose of any part of this acreage, although I tried to do so. This acreage was left on my hands. * * * I did have perfect control, and was at liberty to dispose of these leases as I saw proper. I understood that. * * * This acreage, this 300 acres of land that he handed back to me at the time, had no value *without a drilling contract.* * * * After I entered into contract with Mr. Dearing [for drilling the well] there was no decrease in the value of the land from what it was worth when Mr. Gillette [appellant's president] refused to proceed with the contract. * * * There was no fluctuation in the value of the property from April 29th, the time I entered into the contract with Mr. Gillette, to July 16th, when Mr. Dearing spudded in the well."

Appellee testified that, prior to the time appellant refused to proceed with its contract, he had sold to divers and sundry parties acreage out of said block for the uniform price of $25 per acre, and that the aggregate amount of such sales was $10,750; that he never sold any acreage after that time, and that when the well was completed and proved dry, which was some time thereafter, none of said acreage had any value. Appellee further testi-

fied that on August 5th thereafter he gave Mr. Still a small tract of said acreage in recognition of services rendered him; that said land had a value at that time, and that he gave it to Mr. Still out of consideration for what he had done for him. He further testified that, while the well was being drilled, he thought he had a good chance to get a well and was feeling very hopeful. He further testified:

"I submitted my map showing my *off acreage* to different companies, and they turned my proposition down and did not accept any acreage. I offered it at $25 per acre. * * * I did not submit any price less than $25 an acre; no. I did not submit a less price, because I had sold to other people at that price. I did figure it was worth $25 per acre at that time, if I had had an offer, but probably I would have sold it for less. I did not agree to take less. * * * *In my contract with the Diana Oil Company I was giving them half of the well and I was retaining a half interest; and in my contract with Dearing he got no part of the tract the well was situated on.* * * * I do not know what that half interest in the well that I contracted to convey to the Diana Oil Company was worth. * * * I will say it [said acreage] was not worth a dime unless the well was drilled. I do not know whether it was worth $5 or $10 with the well being drilled, because I do not know what it was worth. I have had quite a bit of experience in blocking up this acreage and selling it off, and I never did sell any for less than $10 per acre as close to the well as this acreage was. * * * Coming right down to facts, I do know that this stuff was not worth any less in the market than any other block I have taken and drilled on. I do not think it was worth any less. In my opinion, I do not know that it was worth $10 per acre at that time. I do not know what it was worth. As I told you before, I sold this acreage in spreads for $25 per acre. Based on my experience, if I had offered this thing, *including the 45½ acres* on which the well was located, at $25 per acre, they would have taken it; I expect they would."

Appellee's evidence as a whole excludes the idea that he ever offered the half interest in the well, or in the tract on which it was being drilled, to any one at any price. He testified affirmatively that his offers to sell to various companies embraced off acreage. Appellee made no attempt to account for his half interest in the derrick, for the cost of which he recovered.

Appellant introduced testimony that the acreage, exclusive of the tract on which the well was drilled, had a market value at that time of from $25 to $50 per acre; that appellee so claimed and stated at and about that time; that one party offered to buy a part of said acreage, and would have given $50 per acre therefor, but that appellee asked $100

per acre. Mr. Dearing, who drilled the well, testified: "From my experience and knowledge of prices, I will tell the court that in that particular field, on that particular day [the day said well was spudded in], that a half interest in that well, in my opinion, was worth $8,500."

Appellee alleged that appellant breached its contract, and the court so found. The duty devolving upon appellee, on the refusal of appellant to proceed with its contract, is stated in the case of Brandon v. Manufacturing Co., 51 Tex. 121, 128, as follows: "It is well settled that it is not only the moral, but the legal, duty of one who seeks redress for another's wrong to use due diligence to prevent loss thereby. The principle applies to a breach of contract, and a party is not entitled to compensation for injurious consequences from such breach, so far as he had the information, time and opportunity necessary to prevent them."

The following authorities announce the same rule: Jones v. George, 61 Tex. 345, 362, 48 Am. Rep. 280; Stanley Manley Boys' Clothes, Inc., v. Hickey, 113 Tex. 482, 484, 259 S. W. 160; Western Union Tel. Co. v. Jeanes, 88 Tex. 230, 232, 31 S. W. 186; A. B. Frank Co. v. A. H. Motley Co. (Tex. Civ. App.) 37 S. W. 868.

Appellee properly undertook to mitigate the damages arising from the refusal of appellant to drill the well. He secured Dearing & Sons to drill the well, and they did so. Appellant does not contend that the well could have been drilled at a lower price. Appellee has recovered in this suit the additional cash outlay required to secure such contract. Assuming, since no contention to the contrary is raised, that the acreage assigned to Dearing & Sons was of equal value to the acreage appellant was to receive, appellee held in his hands, after the making of said contract, 210 acres, which reverted to him on appellant's refusal to drill the well. Appellee concedes in his pleadings, in effect, if not directly, that it was his duty to dispose of this acreage, if he could, and apply the proceeds in satisfaction or reduction of his claim for damages. Since appellant was by the trial court charged with the additional cash outlay required to secure the drilling of the well, and since such drilling restored the values of said acreage to the same level existing before appellant refused to proceed with its drilling contract, appellant was entitled to have the value of such reverting acreage determined in accordance with its restored status.

What value, if any, said acreage had during the few intervening days between appellant's refusal to drill and the making of appellee's drilling contract with Dearing & Sons was immaterial. The contract between appellee and appellant remained executory at the time of the alleged breach. No title to the leases on said acreage ever passed to appellant. The value of said acreage was highly

speculative. Had the well proved a profitable producer, such value would have been enormously enhanced. In such event, appellant would have had no claim against appellee for the profits arising from such enhancement. Such profits would have indisputably inured to the benefit of appellee. Appellee's position was therefore one of peculiar advantage. He had all to gain and nothing to lose by failing to dispose of such acreage, since, according to his contention, if such acreage, as the result of the well's proving dry, became wholly worthless, he could still recoup his loss on the drilling contract by a suit for damages against appellant. Appellee, as a predicate for his right to recover herein, alleged that he was unable to dispose of the reverting acreage, which remained in his hands as the result of appellant's refusal to proceed with its contract and accept such acreage in part payment for its performance. He assumed the burden of sustaining such allegation by affirmative testimony of sufficient force and cogency to support a finding in his favor thereon.

Appellee's own testimony furnishes the only basis for the finding assailed. According to such testimony he never offered a half interest in the well and in the 45-acre tract on which it was being drilled to any one at any price. Appellant introduced testimony showing that such half interest in the well was worth more than $8,000. Appellee did not contradict this estimate of its value. He merely stated he did not know what such half interest was worth. He further testified, in effect, that he could have sold the entire acreage at $25 per acre, if he had included the well, or the tract on which it was being drilled, in his offer. His testimony as a whole merely shows that he could not sell the off acreage at $25 per acre, but it further shows that he made no effort to dispose of such acreage at a less price. His testimony as a whole fails to show that he could not, by the exercise of due diligence, have disposed of the reverting acreage, or a part thereof, if he had included the well and the tract on which it was drilled, for a sufficient sum to extinguish or materially reduce his claim for damage. Appellant's complaint of said finding is sustained. This holding requires a reversal of the judgment.

Appellant assigns as error the holding of the court that it breached its contract to drill said well, upon which holding appellee's recovery herein is predicated. Appellant contends in this connection that appellee first breached said contract, and that thereafter it was by reason of such breach authorized to refuse to proceed with the execution thereof. The contract recited that appellee was the owner of a certain block of oil and gas leases which he desired to have tested for oil and gas; that appellant agreed to drill a test well thereon at a location agreed upon; that appellant, as compensation for drilling said well, should receive (a) an undivided one-half interest in said well and in the 45½-acre leasehold upon which the same was to be drilled; (b) an assignment of a purchase order of "bottomhole money" in the aggregate sum of $5,000 from the Atlantic Oil Producing Company; (c) an assignment of 11 specific tracts of acreage, the first of said tracts being a half interest in the 45½ acres of land on which the well was to be drilled. Said contract contained the following stipulation in respect to abstracts and titles:

"5. First party agrees to deliver to attorney for second party abstracts showing merchantable title vested in him covering all property described herein, delivering abstracts certified to a recent date as quickly as possible and supplementary abstracts to be delivered so that all titles can be approved by attorney for second party before test well above referred to is drilled to the top of the Austin chalk."

Said contract was dated April 29, 1927, and bound appellant to commence drilling on or before the 15th day of May, unless the time for drilling was extended by agreement. Such time was subsequently extended to June 15, 1927. Appellee, in pursuance of his agreement above quoted, submitted to appellant for examination abstracts on only eight of said specified tracts. No abstracts on the other three tracts were ever submitted. The date on which said eight abstracts were submitted is not shown. According to the testimony of appellant's attorney, they were submitted only a short time prior to the date of his opinion thereon. Said opinion was dated May 20, 1927. Appellant's attorney approved or passed the title as shown by said abstracts to three of said tracts, and held the title shown by abstracts to five of the same unmerchantable. On the 8th day of June, 1927, appellee had met or cured some of the objections raised by appellant's attorney, but other material objections had not been cured. Appellee testified that he could have cured all said objections by the time the well was drilled to the Austin chalk. Said chalk was reached 13 days after drilling was commenced. There was testimony that all the defects revealed by said abstracts could not have been corrected within that time, and, in that connection, that the correction of some of such defects would require the institution of suits and the prosecution of same to final judgment. Appellant, on June 8, 1927, notified appellee it would not perform its contract to drill said well and returned all said abstracts and all papers submitted in connection therewith to appellee. Appellant based its refusal to proceed upon appellee's failure to furnish abstracts to said three tracts, and on the further ground that the abstracts submitted failed to show a merchantable title to five of said tracts.

The paragraph of the contract above quoted imposed upon appellee an obligation

to submit abstracts covering all said tracts, showing merchantable title vested in him.. It contained two separate provisions concerning the delivery of such abstracts. The first provision required the delivery of abstracts covering all said tracts, certified to recent date, as quickly as possible. The stipulation "as quickly as possible" does not, of course, set any definite date for such delivery. T. & P. Ry. Co. v. Hughes, 99 Tex. 533, 536, 91 S. W. 567; T. & P. Ry. Co. v. Shipman (Tex. Civ. App.) 98 S. W. 449. When a contract requires the performance of an act as soon as possible, its performance with due diligence under the circumstances of the case, and without unreasonable and unnecessary delay, will meet such requirement. Routt v. Dils, 40 Colo. 50, 90 P. 67, 69; Lucas v. Western Union Tel. Co., 131 Iowa, 669, 109 N. W. 191, 193, 6 L. R. A. (N. S.) 1016; S. D. Childs & Co. v. Omaha Paraphernalia House, 80 Neb. 673, 114 N. W. 941; Wm. Cameron & Co. v. Matthews, 59 Tex. Civ. App. 118, 124 S. W. 192, 193. Appellee undertook to submit abstracts, certified to recent date, covering all the property described in the contract. A partial compliance with this provision was not sufficient. 39 Cyc. p. 1508, par. (d).

We think it was a question of fact, under all the circumstances in evidence, whether reasonable time for submitting such three abstracts had expired when appellant refused to proceed with the drilling of the well, on account, in part at least, of such failure. If such time had expired, appellee was in default in a material provision of the contract, and appellant was justified in refusing to proceed with the performance thereof. Baldridge v. Cook, 27 Tex. 566, 570; El Paso & S. W. R. Co. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 922, 936; Burks v. Neutzler (Tex. Civ. App.) 289 S. W. 436, 438, par. 4; Id. (Tex. Com. App.) 2 S.W.(2d) 416, 418, par. 1; Kidd-Scruggs Co. v. Tyler Hotel Co. (Tex. Civ. App.) 270 S. W. 566, 569, pars. 1 and 2; Pearson v. Oil Associations (Tex. Com. App.) 1 S.W.(2d) 860; Bourland v. Huffhines (Tex. Civ. App.) 269 S. W. 184, 186, pars. 3 and 4; Duniven v. Turner (Tex. Civ. App.) 259 S. W. 267, 269, pars. 2 and 3; 39 Cyc. p. 1522, par. (j). The second provision required appellee to deliver supplementary abstracts so that all titles could be approved by appellant's attorney before the test well reached the top of the Austin chalk. In the absence of a contractual provision requiring the purchaser to point out defects in the abstracts submitted, and allowing time for the correction thereof, the purchaser is under no obligation to do so. Crutcher v. Aiken (Tex. Civ. App.) 252 S. W. 844, 846; Sweet v. Berry (Tex. Civ. App.) 236 S. W. 531, 540, par. 7; Poulton v. Magruder (Tex. Civ. App.) 243 S. W. 512, 514, pars. 3 and 4, reversed on other grounds (Tex. Com. App.) 257 S. W. 533. The contract in this case does not in terms require appellant to point out defects and to allow appellee to attempt to correct the same. If such duty and resulting right existed, they arose out of the language of the provision here under discussion. Whether it was the intention of the parties that the original abstracts submitted should show merchantable title in appellee, or whether it was intended that appellee might show merchantable title in himself for the first time by such supplemental abstracts, even to the extent of showing title acquired by him to material interests in said acreage after the original abstracts were submitted, is not clear. We think that such contract, except as to the provision that appellee should furnish abstracts covering all the property, certified to recent date, as soon as possible, is ambiguous, and that it should on another trial be so treated, and construed according to the rules applicable in such cases.

The judgment of the trial court is reversed, and the cause remanded.