**TODD SHIPYARDS CORPORATION,**
Appellant,

v.

**JASPER ELECTRIC SERVICE COMPANY et al., Appellees.**

No. 25846.

United States Court of Appeals
Fifth Circuit.

July 3, 1969.

Charles R. Vickery, Jr., Vickery & Mc-Connell, D. Graham Moore, Houston, Tex., for appellant, Todd Shipyards Corp.

George A. Weller, Beaumont, Tex., Floyd W. Addington, Jasper, Tex., Robert C. Maley, Jr., Houston, Tex., Wheelus & Green, Beaumont, Tex., for appellee, United States Fidelity and Guaranty Co.

Addington & McGraw, Jasper, Tex., Sheinfeld & Maley, Richard S. Donoghue, Houston, Tex., for appellee, Jasper Electric Service Company.

Joe H. Tonahill and Monte D. Lawlis, Jasper, Tex., for appellee, First National Bank of Jasper.

Before GEWIN, McGOWAN * and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

The nucleus of this diversity case is a subcontract covering the electrical work involved in the construction of an immense derrick barge.[1] The subcontractor, Jasper Electric Service Company, filed this suit in the United States District Court for the Southern District of Texas against the prime contractor, Todd Shipyards Corporation, seeking recovery of, *inter alia*, an amount allegedly due under the subcontract or, in the alternative, an amount due in quantum meruit, as well as actual and exemplary damages for allegedly wrongful conduct on the part of Todd. In response, Todd answered denying liability and counterclaimed alleging, *inter alia*, that Jasper had breached the subcontract in numerous instances causing Todd to suffer damages. In addition, Todd cross-claimed against Jasper's performance surety, United States Fidelity and Guaranty Company, alleging that USF&G was liable to Todd for costs and damages caused by Jasper's failure to perform the subcontract. Finally, the First National Bank of Jasper, Texas intervened seeking judgment against Jasper for any amount recovered from Todd on the ground that First National was the assignee of Jasper's accounts receivable, including the account receivable from Todd.

This case appears to have gone to trial without any attempt being made by the parties to narrow and define the issues.

---

* Judge Carl McGowan of the District of Columbia Circuit, sitting by designation.

1. The subcontract is a somewhat loose conglomeration of papers, including a three-page original purchase order, a series of change orders, and a set of technical specifications incorporated into the purchase order by reference.

If pre-trial conferences were held, nothing appears to have resulted from them.[2] However, the trial court narrowed the issues in its charge to the jury by simply eliminating many of the questions raised by the pleadings. This approach was required by the plain necessity for some narrowing of the issues; the special interrogatories would otherwise have been so complex and confusing that the bluest of the blue-ribbon juries could not disentangle the vipers' nest of facts and alternative theories urged in this case.

The district court's charge to the jury contains basic facts which place the controversy in context. In the early summer of 1964, Todd entered into the prime contract with Brown & Root, Inc. to construct the barge. Todd subcontracted the electrical work on the barge to Jasper which appears to have begun work in December 1964. Jasper performed the subcontract work until July 19, 1965 when Todd took over part of the subcontract work. However, Jasper continued to work on the barge until its completion on August 20, 1965. Todd states in its second amended answer, cross-action and counterclaim:

> Todd notified Plaintiff that Todd would take over and complete the welding stations and the "high bay" lighting in addition to the crane wiring and the electronic stations because of Jasper's defaults; at this time, Plaintiff acting through Mr. Jack Rahar, agreed:
>
> (1) To furnish Todd with the materials necessary to begin work.
>
> (2) Plaintiff to continue working on the other phases of the subcontract.
>
> (3) To cooperate and work with Todd in order to expedite completion of the electrical subcontract.[3]

The district court defined the basic respective positions of the parties as follows:

> Jasper's claims in this lawsuit are that Todd still owes Jasper $41,181.50,

2. We think it appropriate to observe that complex cases like the case *sub judice* cry out for pre-trial proceedings, including stipulation of undisputed and undisputable facts. Much of the evidence in this case appears to have been introduced for the purpose of proving facts which should have been stipulated. Indeed, Todd requested that one hundred one special interrogatories be submitted to the jury, the first fourteen being directed to a supposed "issue" of whether Jasper had ratified the subcontract. Of course, the trial court eliminated any question of ratification by simply charging the jury—and we think quite properly—that there was a subcontract existing between Todd and Jasper.

3. Todd's purchasing agent testified on cross-examination in part as follows:

 Q Now I'm curious about this July 19. You said that you did not take over this contract completely? Is that correct?

 A That is correct.

 Q You said you didn't have any agreement with Jasper? Is that correct?

 A That is correct.

 Q Now, at all times, Jack Rahar and Jasper Electric were insisting that they could complete and perform this contract, didn't they?

 A Jack had advised on the morning of the 19th, that he felt it was his opinion that he could complete the contract.

 Q All right. And despite that, you made the decision to do what?

 A It was my opinion that he couldn't.

 Q And what did you do when you formed the opinion that he couldn't complete the contract?

 A We supplemented his people and material.

 Q What do you mean by "supplementing"? Was this a unilateral decision on your part that you told Jasper, "We're going to do this work"?

 A Yes.
 * * * * *
 Q You didn't make any agreements as to what basis you were taking over under? Any financial basis at all?

 A Agreements? No.

 Q But you still didn't forfeit his contract, did you?

 A No.

 Q And it's your position that you never did completely take over?

 A That is correct.

 Q That Jasper was still there performing the contract?

 A Yes.

which represents the unpaid portion of the original contract price, plus approved extras, and retainage. It is undisputed that this sum of $41,181.50 is correct and includes the unpaid portion of the original contract price, the approved extras, and the retainage. Todd denies that it is obligated to pay Jasper this sum. Also, Jasper claims that Todd breached the subcontract agreement and that Jasper is due additional sums of money as damages for this breach. Also, Jasper claims that it is due additional sums of money because of interruptions to its work brought about by Todd's coordination and supervision of the job. Todd, on the other hand, disputes that it is obligated to pay Jasper any sum of money, including the $41,181.50. Todd claims that Jasper breached its contract and, by virtue of this breach, it was necessary that Todd supplement the work subcontracted to Jasper and actually perform through its own forces a part of the work subcontracted to Jasper. Todd further claims that in performing this work and in supplementing Jasper's work, it utilized all of the $41,181.50, and, in addition thereto, spent additional sums of money in the form of labor and materials, and Todd seeks to recover this additional sum of money from Jasper. Todd further claims that Jasper, in the manner and methods in which Jasper performed its work on the barge, interrupted Todd's work and the work of other subcontractors, and that this interruption caused Todd to suffer damages, and for which Todd seeks to recover these damages from Jasper.

There appears to be no dispute that Jasper performed some work under the subcontract after July 19, 1965. Jasper's position is that it performed a considerable amount of extra work for which it is entitled to recover in quantum meruit. Todd's position is that the alleged extra work was actually required by the subcontract. In addition, it is clear that Jasper wrongfully refused to perform some items of work which were clearly covered by the subcontract. The court instructed the jury that the evidence proved inescapably that the subcontract covered the electrical wiring on the revolver crane and the electronic equipment, which Jasper had refused to perform and which Todd had been required to perform.

On the parties legal rights under the subcontract, the court instructed the jury as follows:

In this case, Jasper is not to be held to a strict and literal performance of its contract in order to enable Jasper to recover on the contract. If Jasper has substantially performed its contract, then Jasper is entitled to recover whatever sums of money under the instructions the Court gives you that you might determine it is entitled to. By substantial performance is meant that there has been no willful departure from the terms of the subcontract between Jasper and Todd, and no omissions of essential work, and that Jasper has honestly and faithfully performed in all material and substantial particulars of the subcontract, and the only variance from a strict and literal performance consists of technical or unimportant details not so essential that the safe operation of the barge was affected.

You are further instructed that A may breach its obligations under a contract with B where A, by wrongful means, has been prevented by B from performing or completing the contract, or where B by its actions makes performance of the contract by A impossible. If such a breach of contract occurs, A who was not guilty of acts bringing about a breach of the contract is excused from further performance under the contract and may recover proper damages it sustained by reason of the breach of the contract by B.

You are further instructed that before Jasper can recover from Todd, Jasper must show that it was not in default under the terms of the contract, or, if in default, such default

had been waived by Todd, and Jasper was at all times ready, willing and able to complete and perform the remaining portions of the contract.

In connection with Todd's claim against Jasper, you are instructed that before Todd can recover from Jasper, Todd must show that its actions of July 19, 1965, in taking over the contract did not constitute a breach of the contract; you are further instructed that before Todd can recover from Jasper, Todd must show that it was not at any time in default under the terms of the contract; that at the time of the taking over by Todd on July 19, 1965, Todd had reasonable grounds to believe that Jasper could not complete its contract within a reasonable time from that date, or at that time Jasper had failed to make reasonable progress of [sic] its obligations under the contract.

The court submitted the case to the jury on fifteen Special Issues. A reading of the Special Issues and the answers of the jury is necessary to a full understanding of this case. In our view, they demonstrate that the jury did not and probably could not understand or correctly decide the questions involved. There are inconsistencies in the Special Issues and conflicts in the jury's answers. It would be impractical and impracticable to undertake in this opinion to catalogue all the evidence which bears on each side of the questions presented by the Special Issues. Instead, our undertaking in this case is limited to discussing facts generally and setting forth the principles of law which apply in the given context. The Special Issues, together with the jury's answers, are set out fully in an Appendix to this opinion.

On the basis of the jury's answers, the court awarded Jasper (1) $41,181.50 as the unpaid portion of the subcontract price and (2) $23,890.18, which was derived by including the $5,325.39 which the jury awarded Jasper for unapproved extras[4] under Special Issues Nos. 5, 6, 7, 9 and 10, and the $24,000 the jury gave in answer to Special Issue No. 15, and by excluding or offsetting $9,210.50 which the court found to be the estimated value of the work that Todd performed in connection with the electrical wiring of the revolver crane and the electronic equipment. The court also held that Jasper was entitled to an attorney's fee under Article 2226 of the Vernon's Ann. Revised Civil Statutes of Texas and found that $10,000 was the amount stipulated by the parties. Additionally, First National was awarded $38,321.08 on its assignment from Jasper, the award to be deducted from and payable out of any funds recovered by Jasper from Todd. Finally, USF&G was awarded an attorney's fee and expenses in the amount of $12,446.34, this amount also to be deducted from and payable out of Jasper's award.

Todd has appealed from the judgment below asserting that the court committed numerous errors in the jury instructions and in the framing and submission of the Special Issues. Jasper, First National, and USF&G are happy with the status quo; they argue that the result below should be upheld. We are convinced that reversible errors were committed; accordingly, we reverse the judgment of the district court. Since a new trial must be held, we do not consider questions urged by the parties which are more proper for consideration by the district court on remand.

## I

One of the most central errors committed below was the concept of substantial performance conveyed to the jury. Todd's ouster of Jasper from part of the subcontract work created a special problem which is not susceptible to a rigid application of the substantial performance doctrine. The result of the instructions and Special Issues was to deny Todd

---

4. Approved extras were items of work which were added to the subcontract by formal change orders. Unapproved extras were items of work allegedly performed by Jasper in the course of its work but which were covered by neither the original purchase order nor by any subsequent change order.

any credit for the work it performed on the subcontract other than the work on the revolver crane and the electronic equipment. Under Tower Contracting Co. v. Flores,[5] this was error. In the interest of efficient judicial administration,[6] we shall summarize the principles established in *Flores* and other relevant Texas law for the guidance of the district court upon remand.

A. If Todd's ouster of Jasper from part of the subcontract was wrongful, the rights of the parties would be as follows: Jasper would be entitled to recover under the subcontract—assuming that Jasper had substantially performed the part of the contract not taken over —the subcontract price of the work performed and the materials supplied both prior to the ouster and subsequent to the ouster, plus Jasper's loss caused by the ouster, *i. e.*, the profit it would have made on the work performed by Todd. Obviously, here, Jasper could not recover the subcontract price of the work performed by Todd. Alternatively, Jasper could simply rescind the subcontract and recover in quantum meruit and quantum valebant for the reasonable value of the work done and the materials supplied [7] under the entire subcontract, less the amount of money already received under the subcontract.

B. If Todd's ouster of Jasper from part of the subcontract was not wrongful, the rights of the parties would be as follows: Since Todd did not rescind the entire subcontract but rather insisted that Jasper continue with the work—along with Todd's assistance—the amount recoverable by Jasper would be the subcontract price allocable to the part of the subcontract actually performed by Jasper (assuming, of course, that Jasper substantially performed that part of the subcontract). Jasper could not claim the subcontract price allocable to the part of the subcontract performed by Todd. Moreover, Todd could not assert now that Jasper did not substantially perform on account of the performance by Todd of the part of the work taken over. Even if Todd had the right to rescind the subcontract, it could not rescind the subcontract in its entirety and, at the same time, demand performance by Jasper. Thus it is clear that Todd rescinded only a part of the subcontract.[8] But Todd cannot now claim an absence of substantial performance by Jasper on the basis of the latter's failure to perform the rescinded part of the subcontract. To permit Todd to raise the substantial performance question in this context would permit Todd to rescind the entire contract; thus Todd could effect by a legal theory what he did not do in practical fact. The principle of substantial performance is therefore inapplicable to the portion of the contract taken over by Todd.

---

5. 294 S.W.2d 266 (Tex.Civ.App.1956), aff'd as modified, 157 Tex. 297, 302 S.W. 2d 396 (1957). Jasper's contention that the work done by Todd was done as a "mere volunteer" is untenable. Todd certainly did not purport to be conveying a gift or merely attempting to make Jasper its debtor. *See* American Exch. Nat'l Bank v. Keeley, 39 S.W.2d 929, 935 (Tex. Civ.App.1931). Todd performed part of the subcontract, whether rightfully or wrongfuly, in a business context for business reasons; it was not a mere volunteer in any sense of the term. *See* Restatement (Second) of Restitution § 2, comment *a* (1937).

6. *See* SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668, 678–679 (1969); Miller v. International Paper Co., 408 F.2d 283, 288–289 (5th Cir. 1969).

7. *See* Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771, 776 (Tex.Com.App.1941).

8. It should be clear that although our discussion of the legal principles applicable in this context is based upon hypothetical assumptions as to the *justifiability* of Todd's take-over of the subcontract, there is nothing hypothetical about the *extent* of the take-over. The evidence is undisputed that Todd took over only a part of the subcontract and that both Todd and Jasper intended that the part of the subcontract not taken over remain in effect.

## II

It should be emphasized that nothing said in part I of this opinion implies that Jasper need not have substantially performed all of its subcontract, other than the part taken over by Todd, before it can recover under the subcontract.[9] Several questions relating to the application of the substantial performance doctrine to Jasper's portion of the subcontract— *i. e.*, the portion not taken over by Todd —remain to be considered.

■ A. While holding that the electrical wiring on the revolver crane and the electronic equipment was covered by the subcontract, the district court charged the jury that Jasper's failure and refusal to perform that work did not constitute a breach of the subcontract because Jasper had reasonable grounds to believe that the work was not covered by the subcontract. This instruction removed from the jury's consideration facts relevant to the determination of whether Jasper substantially performed the subcontract. By taking the question of the crane and equipment wiring from the jury, the court was necessarily holding that the subcontract was clear and unambiguous as to that work.[10] Thus the court's finding that Jasper had reasonable grounds to believe that the work was not covered is somewhat anomalous. If the subcontract clearly required the work—and we think it did—Jasper may have been honestly mistaken but it could not reasonably refuse to perform the work. It is clear that the work on the revolver crane and the electronic equipment which Jasper refused to perform was relevant to the determination of Jasper's substantial performance of the subcontract.

■ In this same vein, it may be noted that any other subcontract work which Jasper refused to do would be relevant to the substantial performance question. Mere delays, however, would not be relevant to the issue because substantial performance relates to the degree of completion rather than the date of completion.

■ B. Under the doctrine of substantial performance, even if a contractor has substantially performed, the amount which he is entitled to receive under the contract must be reduced by the amount required to complete the contract. The parties are in dispute as to who has the burden of proving completion cost. We think it clear that the burden was on Jasper as part of its burden of proving substantial performance. Although the case relied upon by Jasper, Fair v. Uhr,[11] appears to support its position—indeed, although Jasper's position might be the "better" view [12]—we are constrained in this diversity case to apply Texas law and *Fair* is virtually alone in allocating the burden to a party in Todd's position. From at least as far back as Atkinson v. Jackson Bros.,[13] the Texas courts have held that the party attempting to rely upon substantial performance must "furnish the evidence to properly measure the deductions allowable that would be necessary to remedy the defects and omissions." [14] The burden of proving completion cost is therefore clearly upon Jasper.

## III

The remaining contentions of the parties which may be important on the remand of this case are discussed seriatim.

9. See 13 Tex.Jur.2d Contracts § 305, at 555 (1960).

10. See Southwestern Bell Tel. Co. v. Ferguson, 413 S.W.2d 841, 843 (Tex.Civ. App.1967); Signs v. Bankers Life & Cas. Co., 340 S.W.2d 67, 73 (Tex.Civ. App.1960).

11. 310 S.W.2d 125 (Tex.Civ.App.1958).

12. 3A Corbin on Contracts § 710, at 340–41 (1960).

13. 270 S.W. 848, 38 A.L.R. 1377 (Tex. Com.App.1925).

14. *See, e. g.*, Graham Constr. Co. v. Robert H. Pyle, Inc., 422 S.W.2d 485, 487 (Tex.Civ.App.1967); Treiber v. Schaefer, 416 S.W.2d 576, 579 (Tex.Civ.App. 1967); Pacific Coast Eng'r Co. v. Trinity Constr. Co., 410 S.W.2d 797, 800 (Tex.Civ.App.1967); 10 Tex.Jur.2d Building and Construction Contracts § 86, at 105 (1959).

**A.** The district court instructed the jury to ignore the provisions on the reverse side of the purchase order which is the primary document of the subcontract. Todd asserts that it should have had the benefit of several of the excluded provisions. Although the court apparently gave no reason for excluding the provisions on the back side of the purchase order, the ruling appears to have been clear error. The purchase order stated on its face: "Material or services to be furnished [are] subject to all terms and conditions appearing on the face and reverse side of this order * *." Thus the reverse-side provisions were a part of the subcontract and, in the absence of fraud, artifice or trickery,[15] those provisions cannot be disregarded. Therefore, upon remand, the district court must consider Todd's contentions regarding the reverse-side provisions.

**B.** The district court also charged the jury that the subcontract stated no completion date for Jasper's work and that the law implies that the subcontract would be completed within a reasonable time. Todd contends that the court erred because the subcontract states that performance shall be "As required" by Todd. We think the district court correctly charged the law on this question. Where a contract does not specify a time for completion, the court will infer that performance was intended to be made within a reasonable time.[16] Moreover, it is perfectly clear that the phrase "As required" does not impose a specific *time* for performance.[17] Therefore, Jasper's progress under the subcontract must be measured against a standard of reasonableness in the circumstances.

**C.** Todd contends that two provisions in the subcontract's specifications clearly and unambiguously required Jasper to perform a salt water rheostat test on the barge's generators. The two provisions relied upon—one in the General Requirements section and the other in section III(M–1)—state respectively:

> Subcontractor shall furnish * * * labor and materials to completely install and test all electrical and electronic systems * * * as required on Todd Job No. 3381, Brown & Root Derrick Barge. All work to be accomplished in complete accordance with Specifications * * *.

> *Generator Engines and Generators* Electrical subcontractor shall furnish all engineering, labor, and material to accomplish all applicable work required in this section.

In order to succeed with this contention, Todd must show that the contract not only required that the generators be tested—which it obviously does—but also that it required the salt water rheostat test. However, the Specifications mention no particular test at all. Moreover, even if the salt water rheostat test was the only method of testing the generators, the establishment of that fact created a jury question. Jasper's president, Jask Rahar, testified:

Q You did deem it your responsibility, under your agreement with Todd, to test the work that you did, did you not?

A Yes, sir.

Q It is necessary when you do electrical work to make sure that it's going to work?

A Yes, sir.

Q Now, is the salt water rheostat test necessary or was it necessary to test the work that you had done?

A No, sir.

15. *See* Shaw Equip. Co. v. Hoople Jordan Constr. Co., 428 S.W.2d 835, 842 (Tex. Civ.App.1968) ; Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex.1963).

16. Walker v. Central Freight Lines, Inc., 382 S.W.2d 125, 130 (Tex.Civ.App.1964) ; Berne v. Keith, 361 S.W.2d 592, 601 (Tex.Civ.App.1962) ; 13 Tex.Jur.2d Contracts § 290 (1960).

17. See Diana Oil Co. v. Cayton, 20 S.W. 2d 108, 112 (Tex.Civ.App.1929) ("as quickly as possible") ; 13 Tex.Jur.2d Contracts § 291 (1960).

Q How could you have tested the work that you had done?

A The work that we had done—we connected the generators to the switchboard. The cable that runs from the generators to the switchboard, it is of a proper size which had been approved by Brown & Root, Todd and the Coast Guard to carry so much current. If this cable is installed from the generator to the switchboard and a megger put on it and it is grounded, that is all that is necessary.

Thus the determination of whether a salt water rheostat test was required by the subcontract was clearly a jury issue.

 D. After the barge had been completed, Todd submitted its final claims to Brown & Root; the claims apparently included the claims which Jasper had submitted to Todd. Brown & Root refused to pay Todd's claims as submitted but, after negotiation Todd and Brown & Root settled the claims. As a lump-sum settlement, there was no itemized breakdown of the items covered by the settlement. In Special Issue No. 15, the jury was asked how much, if any, of the Brown & Root settlement included money allocable to Jasper's claims against Todd. The jury answered $24,000 and the district court added this amount to Jasper's award.

Todd contends that the amount awarded Jasper under Special Issue No. 15 duplicates the amount awarded Jasper under the subcontract ($41,181.50) and the amount awarded Jasper for unapproved extras under Special Issues Nos. 5 through 13, because Todd's settlement with Brown & Root covered work within the subcontract as well as unapproved extras. We agree. If Brown & Root had paid Todd's itemized claims, the payment would have been evidence that Jasper should likewise be paid for all of its work included on the itemized list. However, since Brown & Root rejected the

itemized claims and since Todd subsequently settled for a lesser amount of money without itemization, the settlement would not serve as evidence that any given Jasper claim was paid. Moreover, even if the settlement had pertinent evidentiary value, the award of the $24,000 was nonetheless erroneous because Special Issue No. 15, as drafted, was clearly duplicative of Special Issues Nos. 5 through 13 and also of the amount awarded under the subcontract. Therefore, Special Issue No. 15 was an improper question which should not be submitted to the jury upon the retrial of this case.[18]

 E. As previously indicated, the court awarded Jasper an attorney's fee of $10,000 on the basis of Article 2226 of the Revised Civil Statutes of Texas and a finding "that all parties hereto stipulated that in the event attorneys' fees were recovered by any party, the amount of such attorneys' fees would be the sum of $10,000." Although this award is necessarily set aside by the reversal of the judgment below, we consider the matter in order to obviate a recurrence of error. Article 2226 states in pertinent part:

Any person having a valid claim against a person or corporation for personal services rendered, labor done, material furnished, * * * may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney.

The Texas courts have held that attorney's fees are not recoverable under

---

18. Since our discussion of this question is for the purpose of providing guidance to the trial court on remand, Jasper's

contention that Todd cannot raise the issue because it was not properly raised below is not pertinent.

Article 2226 on a contract claim.[19] Moreover, although such fees are recoverable in an action based on quantum meruit or valebant, no attorney's fees are recoverable if the quantum meruit or valebant claim is an insignificant part of the relief sought by a party.[20] Therefore, if the issue of attorney's fees for Jasper arises upon remand, the district court should consider Jasper's rights in the context of these rules.

■ Additionally, the district court appears to be mistaken in its finding that the parties stipulated that the amount of an attorney's fee for Jasper would be $10,000. Although there are stipulations in the record regarding attorney's fees for Todd and USF&G, there is no stipulation relating to Jasper. The Texas rule on the determination of the amount of an attorney's fee is stated in Hilliard v. Home Builders Supply Co.:

> Where a statutory attorney's fee is recoverable, the amount to be allowed is determined in accordance with the general practice for determining questions of fact. Consideration should be given to the difficulties and importance of the case, the amount of work and labor performed, the amount involved in the litigation, the benefits to the client and similar facts. The party seeking recovery of a fee must present evidence to show that the amount demanded by him is a reasonable amount.[21]

Therefore, since there was no stipulation before the court as to the proper amount of an attorney's fee for Jasper, evidence should have been adduced to establish a reasonable fee.

■ F. Todd contends that the provision of Jasper's performance bond indemnifying Todd for "cost and damage" caused by Jasper's failure to perform the subcontract entitles Todd to recover attorney's fees from USF&G. We cannot accept this contention. This question is purely a matter of contract construction and, unfortunately for Todd, the Texas courts have already held that a bond provision referring to "costs and damages" does not cover attorney's fees.[22]

## IV

Rule 53(b) of the Federal Rules of Civil Procedure states in part:

> A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated * * *.

We think it appropriate to suggest to the parties that the present case may well be precisely the exception referred to in rule 53(b). There can be no question that the issues are complicated.

The judgment for the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion. The cost of this appeal shall be borne equally by Jasper and Todd.

Reversed and remanded.

## APPENDIX

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on July 19, 1965, Jasper Electric Service Company had substantially performed its obligations under its subcontract with Todd Shipyards Cor-

19. *See, e. g.*, Kirkwood & Morgan, Inc. v. Roach, 360 S.W.2d 173, 177 (Tex.Civ. App.1962). See also New Amsterdam Cas. Co. v. Texas Indus., Inc., 414 S.W. 2d 914 (Tex.1967) ; Cupples Co. Mfrs. v. Farmers & Merchants State Bank, 390 F.2d 184 (5th Cir. 1968) (per curiam).

20. See Parks v. Benson Co., 393 S.W.2d 700, 704 (Tex.Civ.App.1965).

21. 399 S.W.2d 198, 202 (Tex.Civ.App. 1966), quoting from 7 Tex.Jur.2d Attorneys at Law § 119, at 183–85 (1959).

22. Wm. Cameron & Co. v. American Surety Co., 55 S.W.2d 1032 (Tex.Com.App. 1932). Compare Mundy v. Knutson Constr. Co., 156 Tex. 211, 294 S.W.2d 371 (1956).

poration, as that term has been defined for you on page 6 of the charge?

Answer: "We do".

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that on July 19, 1965, Jasper Electric Service Company had made reasonable progress in the performance of its contract with Todd Shipyards Corporation?

Answer: "We do not".

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that on July 19, 1965, Jasper Electric Service Company was unable to complete its contract with Todd Shipyards Corporation within a reasonable time?

Answer: "We do not".

## SPECIAL ISSUE NO. 4

What sum of money, if any, do you find from a preponderance of the evidence to be the reasonable and necessary costs of labor and materials for Todd Shipyards Corporation to complete that part of the contract which it took over and performed on and after July 19, 1965?

Answer: "$11,220,86".

In connection with your consideration of this issue, you are instructed that you will exclude from your consideration or make no allowance or award for the same items of labor and material, services or utilities, which were furnished by Todd Shipyards Corporation to Jasper Electric Service Company from the beginning of the contract to July 19, 1965.

## SPECIAL ISSUE NO. 4-A

What sum of money, if any, do you find from a preponderance of the evidence to be the reasonable and necessary costs of labor and materials for Jasper Electric Service Company to complete that "part" of the contract which Todd Shipyards Corporation took over and performed on July 19, 1965.

Answer: "$30,289.68".

## SPECIAL ISSUE NO. 4-B

If you have answered Special Issue No. 2 "We do", and if you have answered Special Issue No. 3 "We do not", and only in that event, then answer what sum of money, if any, you find from a preponderance of the evidence to be the reasonable and necessary costs of the labor and materials furnished by Jasper Electric Service Company in connection with Jasper's unpaid invoice to Todd Shipyards Corporation, dated July 13, 1965 (plaintiff's Exhibit No. 12), plus the reasonable and necessary costs of labor and materials furnished by Jasper Electric Service Company after July 19, 1965, up to and including the date the barge was delivered to Brown & Root?

Answer: _____.

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that Jasper Electric Service Company furnished the following extras:

A. An "F" frame breaker for power panel PP2A (Item 3 on plaintiff's Exhibit No. 98)?

Answer: "Yes".

If you have answered "Yes", and only in that event, what do you find from a preponderance of the evidence to be the reasonable and necessary difference in the cost between the "E" and "F" frame breakers?

Answer: "$294.20".

B. Installation of a mirrow light (Item 10 on plaintiff's Exhibit No. 98)?

Answer: "Yes".

If you have answered "Yes", and only in that event, what do you find from a preponderance of the evidence to be the reasonable and necessary cost of this item?

Answer: "$219.40".

C. Relocation of telephone in boiler room (Item 13 on plaintiff's Exhibit No. 98)?

Answer: "No".

If you have answered "Yes", and only in that event, what do you find from a preponderance of the evidence to be the

reasonable and necessary cost of this item?

Answer: ――――――.

D. Air handling service (Item 14 of plaintiff's Exhibit No. 98)?

Answer: "Yes".

If you have answered "Yes", and only in that event, what do you find from a preponderance of the evidence to be the reasonable and necessary cost of this item?

Answer: "$78.00".

## SPECIAL ISSUE NO. 6

What sum of money do you find to be the reasonable and necessary cost for the following work performed by Jasper Electric Service Company:

A. Ground ammeter TR4 (Item 4 of plaintiff's Exhibit No. 98).

Answer: "$225.00".

B. Ground ammeter for emergency generator (Item 5 of plaintiff's Exhibit No. 98).

Answer: "$250.00".

C. Water Cooler in revolving tub (Item 12 of plaintiff's Exhibit No. 98).

Answer: "$250.14".

## SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that what Jasper has characterized as "welding station foundations" (Item 6 of plaintiff's Exhibit No. 98) were not covered by change order No. 3, plaintiff's Exhibit No. 4?

Answer: "They were not covered by change order No. 3".

If you have answered "They were not covered by change order No. 3", and only in that event, then what sum of money do you find from a preponderance of the evidence to be reasonable and necessary costs of the labor and material furnished by Jasper Electric Service Company for this item?

Answer: "$2158.65".

## SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that the special deck boxes (Item 7 of plaintiff's Exhibit No. 98) were required of Jasper by the contract between Jasper Electric Service Company and Todd Shipyards Corporation?

Answer: "We do".

If you have answered "We do not," and only in that event, then what sum of money do you find from a preponderance of the evidence to be the reasonable and necessary cost for this item?

Answer in dollars and Cents.

Answer: ――――――.

## SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that Todd Shipyards Corporation failed to furnish Jasper Electric Service Company one set of reproducible working drawings (Item 8 of plaintiff's Exhibit No. 98)?

Answer: "We do".

If you have answered "We do," and only in that event, then what sum of money do you find from a preponderance of the evidence to be the reasonable and necessary cost to Jasper Electric Service Company of providing reproducible working drawings suitable for Jasper Electric Service Company's use?

Answer: "$1,850.00".

## SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that under the contract between Jasper Electric Service Company and Todd Shipyards Corporation that Jasper Electric Service Company was required to provide the labor and material necessary for a salt water rheostat test (Item 9 of plaintiff's Exhibit No. 98)?

Answer: "We do not."

If you have answered "We do not", and only in that event, then what do you find to be the reasonable and necessary cost to Jasper Electric Service Company for providing electrical labor and material furnished by Jasper Electric Service Company in making this test?

Answer: "$3,775.29".

In connection with arriving at this sum of money, if any, you are instructed

that Jasper Electric Service Company has withdrawn from its claim the sum of $2,500.00 for rental of the salt water vat.

## SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that, under the contract between Jasper Electric Service Company and Todd Shipyards Corporation, Jasper Electric Service Company was required to furnish the electrical labor and material necessary to wire and connect the package chiller and associated equipment (Item 11 of plaintiff's Exhibit No. 98)?

Answer: "We do".

If you have answered "We do not", and only in that event, then what sum of money do you find from a preponderance of the evidence to be the reasonable and necessary cost to Jasper Electric Service Company for furnishing the electrical labor and material necessary to wire and connect the package chiller and the associated equipment?

Answer: $_____.

## SPECIAL ISSUE NO. 12

Do you find from a preponderance of the evidence that Todd Shipyards Corporation required Jasper Electric Service Company to furnish electrical labor and material necessary for engineering services on the emergency generator control? (Item 17 of plaintiff's Exhibit No. 98)?

Answer: "We do not".

If you have answered "We do", and only in that event, then what sum of money do you find from a preponderance of the evidence to be the reasonable and necessary cost to Jasper Electric Service Company for furnishing such engineering services on the emergency generator control?

Answer: $_____.

## SPECIAL ISSUE NO. 13

Do you find from a preponderance of the evidence that Todd Shipyards Corporation failed to reasonably coordinate the work on the Barge "Foster-Parker"?

Answer: "We do not".

If you have answered "We do", and only in that event, then answer the following:

Do you find from a preponderance of the evidence that this failure unreasonably interfered with and unreasonably disrupted Jasper's work?

Answer: _____.

If you have answered "We do" and only in that event, then answer the following:

What sum of money, if any, do you find from a preponderance of the evidence to be the reasonable and necessary increase in labor and material costs to Jasper Electric Service Company because of such failure?

Answer: $_____.

(Items 16, 18 and 19 of plaintiff's Exhibit No. 98)

In your deliberations relating to an amount, if any, you will remember the instruction that the Court gave you on page 6 of the charge, that you are not to consider any amount claimed by Jasper Electric Company as a result of delays.

## SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that Jasper Electric Service Company failed to reasonably coordinate its work on the Barge "Foster-Parker"?

Answer: "We do not".

If you have answered "We do", and only in that event, then answer the following:

Do you find from a preponderance of the evidence that such failure unreasonably interfered and disrupted the production work on the Barge "Foster-Parker" by Todd Shipyards Corporation?

Answer: _____.

If you have answered "We do", and only in that event, then answer the following:

What sum of money, if any, do you find? from a preponderance of the evidence to be the reasonable and necessary increase in labor and material costs to

Todd Shipyards Corporation because of such failure?

Answer: $_____.

(Defendant's Exhibit No. 176)

In connection with your consideration of this issue, you shall not consider any sum of money relating to Item 5 of defendant's Exhibit No. 176, increased service cost. Also, in your deliberations relating to an amount, if any, you will remember the instruction that the Court gave you on page 6 of the charge, that you are not to consider any amount claimed by Todd Shipyards Corporation as a result of delays.

### SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that Todd Shipyards Corporation, in connection with its settlement with Brown & Root (plaintiff's Exhibit No. 26), collected from Brown & Root any amount of money relating to any of Jasper Electric Service Company's claims to Todd Shipyards Corporation?

Answer: "We do".

If you have answered "We do", and only in that event, what sum of money, if any, do you find that Todd Shipyards Corporation collected from Brown & Root for this item?

Answer: "$24,000.00".